[No. G032636. Fourth Dist., Div. Three. May 18, 2004.]

GEORGE SPANNER, Plaintiff and Appellant, v.
RANCHO SANTIAGO COMMUNITY COLLEGE DISTRICT, Defendant
and Respondent.

COUNSEL

Law Offices of William G. Schweizer and William G. Schweizer for Plaintiff and Appellant.

Currier & Hudson, Richard J. Currier, C. Anne Hudson and Andrea Naested for Defendant and Respondent.

OPINION

SILLS, P. J.—George Spanner appeals from the denial of his petition for a writ of administrative mandamus, by which he sought reversal of his employer's decision to impose permanent demotion as punishment for his misconduct. He claims the governing board of his employer, Rancho Santiago Community College District, should not have imposed a harsher punishment than recommended by the hearing officer without reviewing the evidentiary record. The trial court found the governing board did not abuse its discretion. We agree and affirm.

## FACTS

George Spanner is a long-time classified employee of Rancho Santiago Community College District (District). In January 2002, Spanner was employed as the chief custodian, which was a supervisory position. Late that month, one of Spanner's subordinates filed a complaint alleging that Spanner had discriminated against him by subjecting him to racial and ethnic slurs and vulgar language. The District placed Spanner on paid administrative leave while it investigated the complaint. On February 27, Spanner was notified that the complaint was "found to have merit." He was immediately relieved of his supervisory duties and demoted to custodian. "However, you will

continue to receive your current compensation until your Skelly meeting option is exhausted. Following the outcome of your Skelly meeting option, you will be classified on a permanent basis as a Custodian, Grade 4, Step 6, plus a 5% swing shift differential, and an additional 7.5% for over 18 years of service recognition."

Spanner, accompanied by his attorney, met with the District's executive director of public affairs and governmental relations, who "concluded that the disciplinary action to demote was appropriate." Spanner requested an evidentiary hearing, which was held over two days. The hearing officer found that Spanner used "vulgarity, offensive, racist and discriminatory language," thus committing "the misconduct as charged by the District," but he disagreed with the punishment of demotion. "[Spanner] has a clean disciplinary record; there is no evidence that his performance has been less than acceptable. There is no evidence that [Spanner] could not function effectively as a supervisor. That is particularly true, where, as here, additional affirmative requirements, including training, are part of the recommended discipline; this assumes [Spanner] will respond positively to such requirements. The Hearing Officer has also noted current employees that are supervised by [Spanner] testified on his behalf." The hearing officer recommended six months of demotion, a written apology, and a diversity training class.

The governing board (Board) reviewed the hearing officer's findings of fact, conclusions, and recommendations and adopted them with the exception of the six-month demotion. "The Governing Board disagrees and orders the permanent demotion of GEORGE SPANNER effective March 11, 2002. [He] engaged in the use of vulgarity, offensive, racist and discriminatory language which was inherently improper as detailed in the 'Letter of Determination: Complaint of Discrimination.' His misconduct was especially outrageous since during the last two years he used the term 'nigger' . . . at the workplace toward African-American employees who reported to him, and during the last two years he used the term 'wetback' . . . at the workplace toward Mexican-American employees who reported to him. He repeatedly during the last two years used the worst vulgar language at the workplace toward other employees including employees who reported to him. The Governing Board cannot condone or tolerate in any way this type of misconduct by a supervisor who must have known that it was very wrong. Permanent demotion is appropriate here since [Spanner] denied using the discriminatory terms described above, he engaged in the misconduct over a period of at least two years, he has shown no remorse, he has made no promise that he will

discontinue his misconduct, it is likely based upon past misconduct that he will continue the misconduct, and it is likely under all of the circumstances that he will not be able to be an effective and respected supervisor."

Spanner filed a petition for writ of administrative mandate in the superior court, arguing that the Board should not have changed the recommended penalty without reviewing the evidence. The trial court declined "to impose upon the governing board some obligation that the law doesn't specify that they have." After reviewing the administrative record, the trial court determined that "the weight of the evidence . . . supports the decision to permanently demote Petitioner, and there is substantial evidence supporting the decision . . . . The Court further holds that the Governing Board of Respondent did not abuse its discretion by ordering the permanent demotion of Petitioner."

## DISCUSSION

■ Spanner concedes that the findings of misconduct are supported by the record; rather, his attack on the judgment is directed entirely at the punishment of permanent demotion. He first contends he was denied due process of law because the Board imposed a harsher punishment than the one recommended by the hearing officer without making an independent review of the record. This contention presents a question of law involving the application of the due process clause; accordingly, we review the trial court's decision de novo. (*Bostean v. Los Angeles Unified School Dist.* (1998) 63 Cal.App.4th 95, 107 [73 Cal.Rptr.2d 523].)

■ Education Code section 88013 governs the discipline of classified employees of a community college. It provides that the governing board "shall prescribe written rules and regulations, governing the personnel management of the classified service, which shall be printed and made available to employees . . . ." (Ed. Code, § 88013, subd. (a).) Disciplinary procedures must include written notice to the employee of the specific charges against him or her and of the right to a hearing. (*Id.*, subd. (c).) The governing board may delegate "its authority to determine whether sufficient cause exists for disciplinary action against classified employees . . . to an impartial third party hearing officer. However, the governing board shall retain authority to review the determination under the standards set forth in Section 1286.2 of the Code of Civil Procedure [grounds for vacation of an arbitration award]." (*Id.*, subd. (e).)

■ The Board adopted Administrative Regulation No. 4319 to govern disciplinary action of permanent classified employees "for just cause." The regulation provides for an evidentiary hearing if the employee requests, with the right to appear in person, with counsel, and the right to present and cross-examine witnesses. "If the hearing was conducted by a hearing officer, the hearing officer shall submit a recommendation to the Board within ten days after the conclusion of the hearing. Within five days after receiving such recommendation, the board shall make a decision. [¶] . . . The Board's decision may be that the recommended discipline be sustained in full, modified, or rescinded. [¶] In the event the Board makes a finding that the recommendation of the administrator should be rescinded, the Board shall make a finding that the employee shall be reinstated in his former position and shall receive pay for all of the period of time he was removed from duty."

Notwithstanding the absence of any requirement that the Board review the record before modifying the recommended punishment, Spanner insists fairness compels us to read such a requirement into the statute and regulation. He points to Government Code section 11517, which applies to administrative hearings involving agencies of the executive branch of the state government, as providing support for his argument. Section 11571 provides that a contested case may be originally heard by an administrative law judge, who shall prepare and deliver a proposed decision "in a form that may be adopted by the agency as the final decision in the case." (Gov. Code, § 11517, subd. (c)(1).) The agency may "[a]dopt the proposed decision in its entirety" or "[r]educe or otherwise mitigate the proposed penalty and adopt the balance of the proposed decision." (*Id.*, subd. (c)(2)(A) & (B).) If the agency rejects the decision, it may refer it back to the same administrative law judge or "decide the case upon the record, including the transcript, or upon an agreed statement of the parties, with or without taking additional evidence." (*Id.*, subd. (c)(2)(D) & (E).)

■ Spanner asserts the disciplinary procedure set forth in Government Code section 11517 represents an overall administrative scheme to which schools should conform. He argues Education Code section 88013 is an "anomaly" and urges us to reject it. But the Legislature clearly differentiated between the two systems, which, within the limits of due process, is its prerogative.

Spanner has a fundamental, vested right in his permanent employment; thus, he is entitled to the protection of the due process clauses of the federal and state Constitutions. (*Skelly v. State Personnel Board* (1975) 15 Cal.3d 194, 207 [124 Cal.Rptr. 14, 539 P.2d 774].) In a disciplinary hearing, due process includes "notice of the proposed action, the reasons therefor, a copy of the charges and materials upon which the action is based, and the right to respond, either orally or in writing, to the authority initially imposing discipline." (*Id.* at p. 215.) Spanner does not dispute that all these safeguards were provided to him. There was no denial of due process.

Spanner next contends there is insufficient evidence to support the punishment of demotion. He argues the hearing officer failed to consider the factors in mitigation, which included his long record of satisfactory employment, the stress of his job, provocation by the complaining employees, and his lack of effective managerial training due to his night shift assignment. The trial court conducted an independent review of the record and determined the findings were supported by the weight of the evidence and the punishment was appropriate. (Code Civ. Proc., § 1094.5, subd. (c).)

Although the trial court is required to reweigh the evidence supporting the finding of misconduct, it may not exercise its independent judgment when reviewing the penalty. "When the superior court has conducted its review and has concluded that the agency properly found misconduct, the imposition of the appropriate penalty for that misconduct is left to the sound discretion of the agency. 'The penalty imposed by an administrative body will not be disturbed in mandamus proceedings unless an abuse of discretion is demonstrated.' [Citation.]" (*Kazensky v. City of Merced* (1998) 65 Cal.App.4th 44, 53 [76 Cal.Rptr.2d 356].) An appellate court must sustain the trial court's findings of misconduct if they are supported by substantial evidence, and it will not disturb the penalty imposed " 'unless it is shown to have been a manifest abuse of discretion.' [Citation.]" (*Id.* at p. 54.) " '[A]dministrative boards and officers' " " 'are vested with a high discretion and its abuse must appear very clearly before the courts will interfere.' " (*Talmo v. Civil Service Com.* (1991) 231 Cal.App.3d 210, 230 [282 Cal.Rptr. 240].)

We agree with the trial court's determination that the Board did not abuse its discretion by imposing the penalty of permanent demotion on Spanner. The hearing officer specifically found the witnesses against Spanner to be credible and Spanner to be untruthful. Spanner had engaged in the misconduct for more than two years, he denied all misconduct except the

use of vulgar language, and he expressed no remorse. The hearing officer felt a less severe punishment should be imposed so as to give Spanner "some warning that his behavior is unacceptable and some opportunity to conform [his] behavior to the employer's legitimate expectations." But the hearing officer acknowledged that Spanner's egregious conduct could justify a severe punishment for the first offense. "In the most egregious circumstances such as vulgar, offensive, racist and discriminatory language, societal norm can substitute for warnings and employees can be severely disciplined for a first offense. . . . [¶] . . . [¶] Discipline for cause, even immediate discharge, is not contingent on a work place rule expressly prohibiting certain misconduct. Certain types of misconduct are so inherently improper that no published rule is necessary to prohibit them in order to make them subject to discipline." In the Board's opinion, Spanner needed no further warning to justify permanent demotion. Although this opinion differed from that of the hearing officer, it was not an abuse of discretion.

## DISPOSITION

The judgment is affirmed. Respondent is entitled to costs on appeal.

Bedsworth, J., and Aronson, J., concurred.