Filed 8/27/18; pub. order 9/21/18 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JAMES C. SHENOUDA, Plaintiff and Appellant, v. VETERINARY MEDICAL BOARD, Defendant and Respondent. | B284738 (Los Angeles County Super. Ct. No. BS160546) |

APPEAL from a judgment of the Superior Court for Los Angeles County, Mary H. Strobel, Judge. Affirmed.

Wallace, Brown & Schwartz and George M. Wallace for Plaintiff and Appellant.

Xavier Becerra, Attorney General, Shawn Paul Cook, Supervising Deputy Attorney General, and Stephen D. Svetich, Deputy Attorney General, for Defendant and Respondent.

Dr. James Shenouda, D.V.M., appeals from a judgment of the trial court denying his petition for writ of administrative mandate. The court found that the weight of the evidence presented at the administrative hearing supported the decision of the Veterinary Medical Board (the Board) imposing disciplinary restrictions on Dr. Shenouda's veterinary practice after finding he committed certain negligent and/or incompetent acts while treating four animal patients. Dr. Shenouda contends that the trial court erred because the expert witness complainant Annemarie Del Mugnaio[1] (Complainant) presented at the administrative hearing failed to establish that Dr. Shenouda breached the applicable standard of care in the practice of veterinary medicine.[2] Dr. Shenouda's brief on appeal, however, does not provide a summary of evidence the trial court relied upon in reaching its determination, let alone a summary of the evidence presented at the administrative hearing (or even a summary of the findings made by the administrative law judge, which were adopted by the Board), nor does he provide any analysis, with citations to the record, to support many of his specific assertions regarding the state of the evidence. Therefore, he has forfeited his contentions on appeal and we need not consider them. Nevertheless, we have reviewed the evidence cited by the trial court

---

[1] Complainant brought the administrative action against Dr. Shenouda in her official capacity as "the Executive Officer of the Veterinary Medical Board, Department of Consumer Affairs."

[2] Dr. Shenouda did not challenge in the trial court, and does not challenge here, the Board's findings that he failed to comply with California recordkeeping requirements.

(and, to the extent Dr. Shenouda has provided specific citations, we also have reviewed that evidence), and we conclude that substantial evidence supports the trial court's findings.  Accordingly, we affirm the judgment.

## BACKGROUND

Dr. Shenouda was issued a veterinarian license by the Board in 2010. In May 2014, Complainant brought an accusation against Dr. Shenouda alleging 11 causes for discipline related to his treatment of four animal patients.

A.    *The Accusation*

1.    *Austin*

The first three causes for discipline related to Dr. Shenouda's treatment of Austin, an eight-year-old Golden Retriever, in 2011. Austin's owner brought him to Colima Animal Hospital (Colima) on April 27, 2011, due to Austin's lethargy, loss of appetite, and vomiting. Dr. Shenouda conducted a physical exam and found that Austin was dehydrated, and had pale gums and a yellowish tinge to his eyes.  He performed diagnostic tests, including a complete blood count, chemistry panel, urinalysis, and abdominal X-rays, and made a presumptive diagnosis of anemia.  Austin was admitted to Colima for overnight treatment and care,  although Colima was closed and had no staff in attendance between the hours of 7:00 p.m. and 7:00 a.m.  Laboratory tests on the morning of April 28 showed that Austin was severely anemic.  Austin died sometime during the evening of April 28. When

3

Austin's owner came to visit Austin at Colima at 7:15 a.m. on April 29, he was told by staff that Austin was "found dead."

### a. *First Cause for Discipline*

The first cause for discipline alleged that Dr. Shenouda was incompetent in his treatment of Austin in four ways.

First, he failed to properly care for Austin during hospitalization. Austin was severely ill and needed close monitoring, which Dr. Shenouda failed to provide (it appeared that Dr. Shenouda did not examine Austin during the hospitalization), and he did not communicate to the owner the limits of care available at Colima.

Second, he committed several incompetent acts related to the treatment given to Austin. He failed to recognize that Austin's anemia was life-threatening and failed to promptly address that condition with steroid medication. He failed to recognize the effect on Austin's red blood cell count of giving Austin large amounts of intravenous fluids and/or failed to re-check Austin's red blood cell count. He inappropriately used Atropine (a pre-anesthetic used to treat slow heart rate) on Austin. Finally, the medical records for Austin failed to show how often Austin received treatment, from whom, and what occurred during the time periods when Colima was closed.

Third, Dr. Shenouda committed several incompetent acts related to diagnostic testing. Although he collected samples from Austin the morning of April 27, he unreasonably delayed getting the results because he chose not to perform any laboratory tests in-house and he did not submit the samples to an outside laboratory until April 28.

4

Although the X-rays taken on April 27 showed that Austin's liver and spleen were enlarged, he failed to recommend that an abdominal ultrasound be performed. It also was unclear from the medical records that he actually looked at the X-rays; he sent them to a radiologist for evaluation on April 29, *after* Austin died. The medical records did not show that the laboratory results or X-rays were ever discussed with Austin's owner. Finally, he failed to perform additional diagnostic tests that should have been performed.

Fourth, Dr. Shenouda failed to fully explain to Austin's owner the seriousness of Austin's condition, or to discuss with the owner the options for treatment, including hospitalizing Austin at a facility with 24-hour care.

### b. *Second Cause for Discipline*

The second cause for discipline alleged that Dr. Shenouda was negligent in his treatment of Austin for the reasons set forth in the first cause for discipline, and because he failed to competently document his treatment of the patient. Those failures to document included his failure to sign or initial entries, perform or document a complete history of the patient, perform or document a complete physical examination of the patient, document the treatment plan, and include a comprehensible assessment of the patient's condition or prognosis, all of which are required under California regulations governing veterinary practice.

### c. *Third Cause for Discipline*

The third cause for discipline alleged that Dr. Shenouda failed to comply with statutory recordkeeping requirements.

### 2. *Brick*

The next three causes for discipline were based upon Dr. Shenouda's treatment of Brick, a seven-year-old Old English Bulldog, in June 2010. Brick's owner brought him to Colima for evaluation of a limp in his right hind leg and skin problems. Brick became aggressive during the initial examination. Although there was no indication in the medical records that Dr. Shenouda asked the owner whether Brick had eaten before he was brought in for treatment, Dr. Shenouda recommended that Brick be sedated for the examination and treatment; the owner agreed. Brick was given a sedative and was intubated. During the examination, Dr. Shenouda noticed that Brick had harsh lung sounds, so he took a chest X-ray to assess the lungs; the X-ray showed changes to the lungs. Dr. Shenouda treated Brick's skin issues and Brick was allowed to recover from sedation. Brick's owner subsequently reported in a written complaint to the Board that Brick had trouble walking and his health deteriorated after the treatment at Colima.

### a. *Fourth Cause for Discipline*

The fourth cause for discipline alleged that Dr. Shenouda acted incompetently in his treatment of Brick in four ways.

First, Dr. Shenouda acted incompetently with regard to his sedation of Brick. He failed to inform Brick's owner of the general risks of sedation, especially the unique problems and risks associated with sedation of an Old English Bulldog, which is a respiratory compromised breed of dog known to be extremely prone to airway compromise and respiratory distress, especially when sedated or anesthetized. He did not intubate Brick until 30 minutes after the sedative was administered, and there was no indication in the medical record that Brick was placed on oxygen while intubated. Although there was a risk that Brick would vomit and aspirate stomach content into his lungs if he had eaten before being sedated, there was no indication in the medical records that Dr. Shenouda ascertained when Brick had last eaten before the sedative was administered. Dr Shenouda also failed to consider alternative strategies for managing Brick's temperament problems (such as muzzling him or using oral sedation), given the unique problems with sedating Old English Bulldogs.

Second, Dr. Shenouda inaccurately read the chest X-ray, missing the indications of aspirational pneumonia, and failed to inform Brick's owner of the X-ray findings.

Third, although Brick was brought to Colima for, in part, a limp in his right hind leg, there was no indication in the medical record that Dr. Shenouda examined Brick's leg or tried to determine why Brick was limping.

Fourth, Dr. Shenouda prescribed two powerful steroids to treat Brick's skin problems that were contraindicated by other exam findings.

7

He also failed to record Brick's weight, which would be required to ascertain accurate dosages.

### b.  *Fifth Cause for Discipline*

The fifth cause for discipline alleged that Dr. Shenouda was negligent in his treatment of Brick for the reasons set forth in the fourth cause for discipline and for his failure to comply with certain regulations governing the practice of veterinary medicine.  Those failures were alleged to be Dr. Shenouda's failure to:  (1) obtain Brick's owner's informed written consent for Brick to be sedated; (2) obtain and record Brick's weight on Brick's medical chart, which would be required to competently calculate the correct dosage of the sedative used; and (3) competently document his treatment of Brick.

### c.  *Sixth Cause for Discipline*

The sixth cause for discipline alleged that Dr. Shenouda failed to comply with statutory recordkeeping requirements.

### 3.  *Roxy*

The seventh, eighth, and ninth causes for discipline were related to Dr. Shenouda's treatment of Roxy, a five-year-old Boston Terrier, in August 2011.  Roxy's owner took Roxy to Colima on August 18, 2011 because of a broken toenail.  Dr. Shenouda performed a physical examination, then placed Roxy under general anesthesia and removed the nail.  Roxy's limb was bandaged and her owner was given after-care instructions.  The owner brought Roxy back to Colima on August 24,

8

complaining about the appearance of Roxy's toe and that Roxy was in pain. Dr. Shenouda put Roxy under local anesthesia and placed two sutures in the nail bed to facilitate better healing; the toe healed without further complications. Upon review of the case records, there appeared to be numerous inconsistencies between what appeared in the handwritten medical records for Roxy and what appeared in the typewritten records, and between what Dr. Shenouda told the owner about his treatment of Roxy and the treatment he actually rendered.

### a. *Seventh Cause for Discipline*

The seventh cause for discipline alleged that Dr. Shenouda was negligent in his treatment of Roxy because he failed to competently document the care given to Roxy. It alleged that his hand-written and the typed versions of Roxy's records differed in multiple significant instances, and it was unclear which version was accurate. It also alleged that Dr. Shenouda failed to include the names or initials of the veterinarian responsible for the medical entries, and that the identity of the animal being treated was missing from several of the medical record sheets. Finally it alleged that the anesthesia record (which was undated) did not indicate who administered the medications, how Roxy was induced, and whether she was monitored throughout the anesthetic procedures; it also failed to note that the blood work performed before the anesthesia was normal.

b. *Eighth Cause for Discipline*

The eighth cause for discipline alleged that Dr. Shenouda was incompetent in his treatment of Roxy for the reasons stated in the seventh cause for discipline, and for two other reasons. First, Dr. Shenouda failed to produce an accurate and consistent surgical report detailing what occurred during the initial surgery on August 18. Second, Dr. Shenouda failed to clearly and accurately document the medications he dispensed to Roxy, resulting in records that were inconclusive as to what drugs, in what quantities, were dispensed.

c. *Ninth Cause for Discipline*

The ninth cause for discipline alleged that Dr. Shenouda failed to comply with statutory recordkeeping requirements.

4. *Shannon*

The tenth and eleventh causes for discipline related to Dr. Shenouda's treatment of Shannon, an 11 week old kitten, in July 2010. Shannon was brought to Colima for spay surgery. Dr. Shenouda performed the surgery under general anesthesia and discharged Shannon later that day. When the owner picked Shannon up from Colima, she noticed that Shannon was having difficulty breathing and that her "stomach" area was swollen. Two days later, the owner took Shannon to a different veterinarian, who diagnosed Shannon as having air in her stomach and intestines and a large hernia at the surgery site. That veterinarian treated Shannon with antibiotics and performed

surgery the following day to correct the hernia. Shannon died of cardiac and pulmonary arrest shortly after that surgery was completed.

### a. *Tenth Cause for Discipline*

The tenth cause for discipline alleged that Dr. Shenouda was negligent in his treatment of Shannon in two ways. First, his physical examination of Shannon before the surgical procedure was inadequate because he failed to perform a systems-wide evaluation. Second, Dr. Shenouda's documentation of the anesthetic procedure was inadequate in that he failed to note who administered the induction agent, whether Shannon was monitored throughout the procedure, and how much of each anesthetizing drug she received.

### b. *Eleventh Cause for Discipline*

The eleventh cause for discipline alleges that Dr. Shenouda failed to comply with statutory recordkeeping requirements.

## B. *The Administrative Hearing and Decision*

A hearing on the accusation was held before an administrative law judge (the ALJ) over two days. Before the hearing, Dr. Shenouda and Complainant entered into a written stipulation regarding some of the allegations of the accusation and the exhibits. Among other things, Dr. Shenouda stipulated that he did not dispute or contest the allegations set forth in the recordkeeping violation causes for discipline (the third, sixth, ninth, and eleventh causes for discipline). With regard to the negligence and incompetence causes for discipline (the first,

second, fourth, fifth, seventh, eighth, and tenth causes for discipline), he stipulated that he did not dispute or contest the background factual allegations regarding what happened to each of the animals at issue. He and Complainant also stipulated to the relevance of and foundation for several exhibits. Those exhibits included the consumer complaints filed by each of the owners of the animals at issue, the Board's "complaint review worksheet" for each animal (each of which included an evaluation and findings by consultant Beth M. Parvin, D.V.M.), the patient records for each of the animals, and the report of Complainant's expert witness, Dr. David Robbins, for each of the animals.

The only testimony presented at the administrative hearing was from Complainant's expert witness, Dr. David Robbins, a licensed veterinarian who testified as to the acts alleged in the accusation and opined that they demonstrated negligence and/or incompetence, and from Dr. Shenouda. Following the presentation of the testimony, the parties submitted written closing arguments.

The ALJ issued a lengthy proposed decision that included detailed factual findings and concluded that cause existed to discipline Dr. Shenouda's veterinarian license under each of the causes for discipline alleged in the accusation.[3] The ALJ concluded that Complainant met her burden of proof to prove her case by clear and convincing evidence to a reasonable certainty, finding that her expert witness "reviewed the evidence in each case thoroughly and testified credibly in support of his

---

[3]     For each cause for discipline, the ALJ set forth which factual findings supported that cause.

12

analyses and conclusions."[4] The ALJ also noted that "[a]t the hearing, [Dr. Shenouda] did little to counter the 'truth' of the evidence Complainant presented. In two cases, [Dr. Shenouda] attributed responsibility for the poor outcomes on the pets' owners. In two other cases, [Dr. Shenouda] presented no evidence. [Dr. Shenouda] did not provide expert witness testimony regarding the applicable standards [of] practice, and whether [he] met, or departed from, those standards, in any of the four cases." The ALJ ordered that Dr. Shenouda's veterinarian license be revoked, that the revocation be stayed, and that Dr. Shenouda be placed on probation for five years under certain terms and conditions, including a 90-day suspension from the practice of veterinary medicine.

The Board accepted and adopted the ALJ's proposed decision as the decision of the Director of the Department of Consumer Affairs, Veterinary Medical Board.

C.     *The Petition for Writ of Administrative Mandate and Trial Court Decision*

Dr. Shenouda filed a petition for writ of mandate in the trial court, contending that the Board's decision was invalid, in whole or in part, because (1) there was no cause shown for imposition of any discipline as to some or all of the violations charged; (2) the Board's findings were not

---

[4]     In contrast, the ALJ found that Dr. Shenouda's testimony regarding what he did in treating Austin and how he kept Austin's owner informed "was not credible."

supported by the weight of the evidence or by any substantial evidence; and (3) the penalties imposed by the Board were excessive as a matter of law.

In his brief filed in support of his petition, Dr. Shenouda challenged on two grounds Dr. Robbins' expert testimony as a whole. First, he contended that Dr. Robbins applied an incorrect standard in his opinions regarding Dr. Shenouda's alleged negligence, asserting that Dr. Robbins based his opinions upon what he (Dr. Robbins) would do in his own practice rather than basing them upon whether Dr. Shenouda's conduct was within the standard of practice in the community. Second, he contended that Dr. Robbins applied an incorrect definition of incompetence and failed to distinguish between negligence and incompetence.

Dr. Shenouda also asserted that incompetence was not established because Dr. Robbins' conclusions regarding which acts constituted incompetence were not identical to the acts identified by Dr. Parvin (the Board's internal reviewer) as constituting incompetence, and therefore the evidence of incompetence necessarily was not clear and convincing. Finally, Dr. Shenouda purported to challenge the Board's conclusions regarding each of the negligence causes for discipline. He did not, however, identify any particular factual finding he was challenging. Indeed, he did not even set forth any of the factual findings. In fact, throughout his brief he provided very little description of the evidence

14

produced at the hearing, and few citations to the specific evidence he was contesting.[5]

Despite Dr. Shenouda's failure to provide more than a few citations to the record in support of his arguments, the trial court carefully reviewed the record under the independent judgment test (citing *Bixby v. Pierno* (1971) 4 Cal.3d 130 (*Bixby*); *Morrison v. Housing Authority of the City of Los Angeles Bd. of Comrs.* (2003) 107 Cal.App.4th 860; and *Fukuda v. City of Angels* (1999) 20 Cal.4th 805 (*Fukuda*)), and addressed all of his arguments.

First, the court rejected Dr. Shenouda's argument that Dr. Robbins applied an incorrect standard of care with regard to his negligence opinions. The court cited to specific evidence and testimony demonstrating that Dr. Robbins was well aware that negligence requires "'a departure from the standard of practice in the community,'" and that he applied that definition in opining that Dr. Shenouda was negligent.

Second, the court found that the definition of incompetence that Dr. Robbins relied upon was consistent with California law. With regard to Dr. Shenouda's contention that Dr. Robbins did not distinguish between negligence and incompetence, the court first noted that Dr. Shenouda did not cite any evidence to challenge the specific fact findings on which the incompetence counts were based. The court

---

[5]    Dr. Shenouda conceded in his brief that the Board's findings related to the four recordkeeping counts for discipline were supported by the record, but argued that the discipline imposed was based primarily on the other counts.

15

also noted that Dr. Shenouda had raised the same issue in the administrative proceedings, and the Board rejected Dr. Shenouda's argument, finding that Dr. Robbins "ably described each instance of alleged negligence or incompetence in the context of the care and treatment required, and explained the medical purposes relevant to each act or omission alleged. He also credibly explained that he could have determined some of [Dr. Shenouda's] alleged acts or omissions to amount to either negligence or incompetence. This was not because he did not know the difference between negligence and incompetence, but because for an expert, such determinations sometimes require a close 'judgment call.'" The court found persuasive the Board's reasoning on this issue.

With regard to Dr. Shenouda's contention that the disagreements between Dr. Robbins and Dr. Parvin regarding which acts constituted incompetence precluded a finding of incompetence, the court found that the fact that the two veterinarians disagreed as to the specific acts was not dispositive. The court also noted that Dr. Shenouda provided no analysis of the specific alleged disagreements, provided no citations to the record identifying those alleged disagreements, and did not persuasively explain why his alleged acts or omissions in the four cases could not support a finding of incompetence.

Finally, the court addressed Dr. Shenouda's challenge to the negligence findings in each of the four cases. With regard to the cases involving Austin and Brick, the court noted that Dr. Shenouda failed to identify which of the Board's specific fact findings or legal conclusions he was challenging. The court then cited to evidence supporting a

16

negligence finding as to each case, and concluded that Dr. Shenouda "fail[ed] to show, by citation to the record, that the Board's findings of negligence . . . are not supported by the weight of the evidence." With regard to Roxy, the court noted that Dr. Shenouda argued that Dr. Robbins did not find any deviation from the standard of care other than Dr. Shenouda's recordkeeping. But the court observed that the Board's finding of negligence in Roxy's case was based upon Dr. Shenouda's failure to keep accurate and consistent medical records, and Dr. Robbins' testimony (which the court cited) supported the Board's finding. Finally, with regard to Shannon's case, the court found that Dr. Shenouda failed to show a prejudicial abuse of discretion by arguing that there was no evidence of negligence "apart from recordkeeping issues." The court found that "[i]nadequate recordkeeping was a major part of the findings as to Shannon," and Dr. Shenouda's record citations did not undermine the Board's finding that he failed to perform or document that he conducted a physical examination of Shannon before proceeding with anesthesia and surgery.

The court entered judgment denying Dr. Shenouda's petition for writ of mandate, from which Dr. Shenouda timely filed a notice of appeal.

## DISCUSSION

On appeal, Dr. Shenouda makes the same arguments he made in the trial court. The Board contends that Dr. Shenouda forfeited his arguments on appeal because he failed to meet his burden to show, by setting out the facts adduced below with citations to the record, that no

17

substantial evidence supports the trial court's finding that the weight of the evidence supported the Board's license discipline decision. We agree. Indeed, in both the trial court and in this court, Dr. Shenouda has demonstrated a lack of appreciation for the standards of review of an administrative decision in the trial court and the appellate court.

A. *Standards of Review*

On review of an administrative determination suspending a professional license, the trial court exercises its independent judgment on both the facts and the law in determining whether the weight of the evidence supports the administrative decision. (*Fukuda, supra*, 20 Cal.4th at p. 811; *Drummey v. State Bd. of Funeral Directors* (1939) 13 Cal.2d 75, 85 (*Drummey*).) However, "'[t]he findings of a board where formal hearings are held . . . come before the courts with a strong presumption in their favor based primarily on the [rebuttable] presumption contained in . . . [Evidence Code section 664] "[t]hat official duty has been regularly performed." Obviously, considerable weight should be given to the findings of experienced administrative bodies made after a full and formal hearing, especially in cases involving technical and scientific evidence.'" (*Fukuda, supra*, 20 Cal.4th at p. 812, quoting *Drummey, supra*, 13 Cal.2d at p. 86.)

"[T]he party challenging the administrative decision [in the trial court] bears the burden of convincing the court that the administrative findings are contrary to the weight of the evidence." (*Fukuda, supra*, 20 Cal.4th at p. 817; see also *Sipper v. Urban* (1943) 22 Cal.2d 138, 144

18

["the burden shall rest upon the petitioner to support his challenge affirmatively, competently, and convincingly"] (conc. opn. of Schauer, J.), cited with approval in *Fukuda*, at p. 814.)  Thus, the challenger has not only the burden of production -- which is satisfied by producing a complete record of the administrative hearing (*Fukuda, supra*, 20 Cal.4th at p. 821, fn. 14) -- but also the burden of proof or persuasion. (*Id.* at p. 820.)

On appeal, the appellate court reviews the trial court's ruling under the substantial evidence test, "[e]ven when, as here, the trial court is required to review an administrative decision under the independent judgment standard of review." (*Fukuda, supra*, 20 Cal.4th at p. 824.)  Our focus is on the *trial court's* findings.  (*Bixby, supra*, 4 Cal.3d at pp. 143-144, fn. 10.)  "[O]ur function on appellate review is solely to decide whether credible, competent evidence supports that court's judgment." (*Yakov v. Board of Medical Examiners* (1968) 68 Cal.2d 67, 69.)  If the record contains facts to support that judgment, we must affirm.  (*Ibid.*)

Because judgments of the trial court are presumed to be correct, the appellant bears the burden to affirmatively demonstrate error, and must show that the error was prejudicial.  (*Foreman & Clark Corp. v. Fallon* (1971) 3 Cal.3d 875, 881 (*Foreman*) [the appellate court "'starts with the presumption that the record contains evidence to sustain every finding of fact'"]; *In re Marriage of Behrens* (1982) 137 Cal.App.3d 562, 575 ["'The *burden is on the appellant,* not alone to show error, but to show *injury* from the error'"].)

B.    *Dr. Shenouda Failed to Meet His Burden in the Trial Court*

It is clear from our discussion of the standard of review in the trial court that a person challenging in the trial court the orders of a licensing board in a disciplinary proceeding cannot simply present the court with the administrative record and assert, without analysis or specific citations to the record, that the board's orders were against the weight of the evidence. Instead, the challenger must identify (with citations to the record) the factual findings made by the board that he or she is challenging and demonstrate (with citations to the record) why those factual findings were against the weight of the evidence. Of course, when (as in the present case) the challenger has a general objection, such as that the expert witness used an incorrect standard when forming opinions regarding negligence or used an incorrect definition of incompetence, he or she may be excused from identifying the specific factual findings being challenged (since such objections would apply to all negligence or incompetence findings). But the challenger still has the burden to show, through citations to the record, that the expert did in fact use an incorrect standard or definition. And in doing so, the challenger cannot simply ignore the evidence in the record that was relied upon by the board in finding that the correct standard or definition was applied. Rather, the challenger must explain why that evidence is insufficient to support that finding.

In the present case, as the trial court noted, Dr. Shenouda failed to identify the factual findings he was challenging and provided few citations to the administrative record to support his argument that the

weight of the evidence did not support the Board's decision. He also ignored the evidence in the administrative record that the Board expressly relied upon in concluding that Dr. Robbins applied the correct standard in forming his opinions regarding negligence and the correct definition in forming his opinions regarding incompetence.

Nevertheless, despite Dr. Shenouda's failure to meet his burden of proof and persuasion (*Fukuda, supra*, 20 Cal.4th at p. 820), the trial court independently examined the administrative record and determined, in a detailed ruling that included citations to the record, that the weight of the evidence supported the Board's decision.

C.      *Dr. Shenouda Failed to Meet His Burden on Appeal*

As noted, on appeal from a judgment denying a petition for writ of administrative mandate, the focus is on the *trial court's* findings and whether there is substantial evidence to support those findings (*Fukuda, supra*, 20 Cal.4th at p. 824; *Bixby, supra*, 4 Cal.3d at pp. 143-144, fn. 10), and the trial court's judgment is presumed correct (*Foreman, supra,* 3 Cal.3d at p. 881). As in all appeals, the appellant has burden to show, through analysis and citation to the record, that no substantial evidence supports the court's findings.

"'The appellate court is not required to search the record on its own seeking error.' [Citation.] Thus, '[i]f a party fails to support an argument with the necessary citations to the record, . . . the argument [will be] deemed to have been waived. [Citation.]' [Citations.]" (*Nwosu v. Uba* (2004) 122 Cal.App.4th 1229, 1246.) In addition, when the

21

substantial evidence standard of review applies, the appellant is required "'to demonstrate that there is no substantial evidence to support the challenged findings.' . . . A recitation of only [the appellant's] evidence is not the 'demonstration' contemplated under the above rule. [Citation.] Accordingly, [when appellants] contend [that] 'some particular issue of fact is not sustained, they are required to set forth in their brief *all* the material evidence on the point and *not merely their own evidence*. Unless this is done the error assigned is deemed to be waived.'" (*Foreman*, *supra*, 3 Cal.3d at p. 881.)

Dr. Shenouda failed to address, let alone meet, his burden in this appeal. In fact, he filed an appellant's opening brief in this court that is an almost verbatim copy of the brief he filed in the trial court. The only differences between the two briefs are that he added (1) a short (two paragraph) introduction that explains that the appeal is taken from the judgment of the trial court, which Dr. Shenouda contends was made in error; (2) a short (three paragraph) summary of the proceedings in the trial court; (3) an expanded legal discussion regarding the appropriate standard of care for an expert veterinarian to apply when forming opinions regarding negligence; (4) an expanded footnote regarding whether Dr. Robbins was engaged in "speculation" when he assumed that Dr. Shenouda treated Austin;[6] (5) a three-sentence discussion (with a citation to the record) of Dr. Robbins' testimony that he did not know

---

[6]     This is a curious addition, given that Dr. Shenouda stipulated that he did not dispute the factual allegations regarding Austin, which included that he treated Austin.

when or how Austin died;[7] (6) a citation to his testimony about what he advised Austin's owner to do and the owner's response;[8] (7) a sentence (with a citation to the record) stating that Dr. Robbins acknowledged that there was no way to know whether Brick suffered any harm due to aspiration pneumonia;[9] and (8) a citation to the record to support Dr. Shenouda's assertion with regard to Shannon that "[a]part from recordkeeping issues, no actual negligence was identified and no harm was attributed to any negligence on Dr. Shenouda's part in terms of care he did or did not provide."

Because his appellant's opening brief is a virtual copy of his brief in the trial court, it is unsurprising that Dr. Shenouda does not address the trial court's findings. Indeed, he makes no mention of the trial court's findings other than to note the court adopted a lengthy tentative ruling as its order and denied his writ of mandate. He does not explain

---

[7] This discussion relates to Dr. Shenouda's assertion that there was no showing that his treatment caused Austin's death, and therefore there could be no finding of negligence. However, actual harm to the patient and causation are not required to be shown in a license disciplinary proceeding because the purpose of such proceedings is to protect the public by imposing discipline before the licensee causes actual harm. (See, e.g., *Griffiths v. Superior Court* (2002) 96 Cal.App.4th 757, 772; *Kearl v. Board of Medical Quality Assurance* (1986) 189 Cal.App.3d 1040, 1053; *Bryce v. Board of Medical Quality Assurance* (1986) 184 Cal.App.3d 1471, 1475.)

[8] Dr. Shenouda fails to acknowledge that the Board expressly found the cited testimony was not credible.

[9] But see footnote 7, *ante*.

23

why the evidence cited by the trial court does not support its findings.[10] In short, he failed to sustain his burden on appeal and thus has forfeited his assignment of error. (*Foreman, supra,* 3 Cal.3d at p. 881; *Nwosu v. Uba, supra,* 122 Cal.App.4th at p. 1246.)

### DISPOSITION

The judgment is affirmed. The Veterinary Medical Board shall recover its costs on appeal.



WILLHITE, J.


We concur:



MANELLA, P. J.



MICON, J.*

---

[10]     In fact, we have examined that evidence and conclude that it does support the trial court's findings.

*Judge of the Los Angeles County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JAMES C. SHENOUDA, | B284738 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS160546) |
| v. | |
| VETERINARY MEDICAL BOARD, | ORDER GRANTING PUBLICATION |
| Defendant and Respondent. | |

THE COURT:*

The opinion in the above-entitled matter filed on August 27, 2018, was not certified for publication in the Official Reports. Good cause appearing, it is ordered that the opinion in the above entitled matter be published in the official reports.

_____

*WILLHITE, Acting P. J.          MICON, J.**

**Judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.