Filed 3/25/26  Hansen v. Commission on Teacher Credentialing CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| CHRISTIAN ROBERT HANSEN,<br><br>    Appellant,<br><br>    v.<br><br>COMMISSION ON TEACHER CREDENTIALING et al.,<br><br>    Respondents. | D084576<br><br><br>(Super. Ct. No.<br> 37-2022-00048594-CU-WM-CTL) |

APPEAL from a judgment of the Superior Court of San Diego County, Joel R. Wohlfeil, Judge.  Affirmed.

Christian Robert Hansen, in pro per, for Plaintiff and Appellant.

Rob Bonta, Attorney General, Carl W. Sonne, Senior Assistant Attorney General, Erin M. Sunseri, Supervising Deputy Attorney General,

and Alan K. Macina, Deputy Attorney General, for Defendant and Respondent Commission on Teacher Credentialing.[1]

After Christian Robert Hansen pleaded guilty to two felony fraud convictions, the Commission on Teacher Credentialing (Commission) [2] revoked his teaching certificate and credential and denied his application for a specialist credential.  The trial court denied Hansen's petition for writ of administrative mandamus and affirmed the Commission's decision.

On appeal, Hansen contends that the Commission abused its discretion when it chose not to stay revocation of Hansens's credentials for five years, subject to probation, as recommended by an administrative law judge (ALJ).  Because the record contains substantial support for the trial court's ruling, we find no abuse of discretion.

The ruling is affirmed.

## FACTUAL AND PROCEDURAL BACKGROUND

Between 2011 and 2013, and again in 2017, as he later admitted, Hansen conspired with others to commit securities fraud.  Between 2011 and 2013, while employed by an investor relations firm, Hansen received shares from public companies into his personal brokerage account, but concealed from the brokerage firm that the shares were given in exchange for stock promotion services his employer provided to those companies.  He then sold

---

[1]     San Diego Unified School District has not made an appearance in this action and did not file a responsive brief.  Appellant does not appeal any order from San Diego Unified School District.

[2]     The Commission is responsible for the credentialing of public school teachers, including issuing credentials and taking adverse actions against applicants and credential holders.  (See Ed. Code, §§ 44421, 44225.)

the shares and returned most of the proceeds from sale of those shares to his employer. When he discovered that these stock transfers were illegitimate, he resigned his position with his employer, he later testified. From January through July 2017, Hansen received unregistered shares of a public company's stock through a coconspirator. He claimed to qualify for an exemption to the Securities and Exchange Commission's (SEC) registration requirements by making two false representations: that he did not act in concert with anyone else for the purpose of selling the shares, and that he would not share any of the proceeds from the sale to the person from whom he acquired them. In contravention of those representations, he knew that he obtained the shares through an agreement with a coconspirator, and after he sold the shares, he returned some of the proceeds to his coconspirators. This conduct violated federal securities laws. Hansen agreed that the gain attributable to his role in the conspiracies totaled $76,847.

Hansen left the securities industry and began working in education. The Commission issued Hansen a Certificate of Clearance, effective October 2017 to November 2022 (Certificate),[3] and Hansen joined Garfield High School to train as a special education teacher. He successfully completed the credentialing process and in 2018, the Commission issued Hansen an intern education specialist instruction credential, effective October 2018 to November 2020 (Credential or Intern Credential). In 2018 Garfield High School hired him as a special education teacher.

In spring 2018, agents of the Federal Bureau of Investigation (FBI) approached Hansen about the securities fraud scheme. Hansen admitted

---

[3] A Certificate of Clearance is a document, issued by the Commission, which verifies that the holder meets personal qualifications necessary to obtain a regular California teaching or services credential. (Cal. Code Regs., tit. 5, § 80028.)

wrongdoing and agreed to assist the FBI in its investigation. He reached a plea agreement with the United States Attorney, and in November 2019, pursuant to that plea agreement, Hansen pleaded guilty to two counts of conspiracy to commit securities fraud in federal court. In April 2020, Hansen consented to an entry of judgment against him in a civil action brought by the SEC based on the same conduct. The judgment enjoined Hansen from conducting certain securities trading activity and permanently prohibited Hansen from trading penny stocks. In May 2020, the federal district court sentenced Hansen to three years of probation and ordered him to pay $12,520.74 in restitution.

In April 2020, while his Certificate and Intern Credential were still valid, Hansen submitted an application for a preliminary five-year education specialist instruction credential (Application).

In July 2020, after his criminal judgment was finalized, Hansen informed the Commission of his criminal convictions and provided a narrative of his crimes.

In September 2021, the Executive Director of the Commission (Complainant) filed an accusation against Hansen (Accusation), alleging that the conduct underlying Hansen's felony convictions called for discipline against Hanen's Certificate and Credential (together, credentials) and the denial of his Application. The Accusation sought disciplinary action against Hansen's credentials due to his: (1) unprofessional conduct, (2) immoral conduct, (3) acts of moral turpitude, and (4) evident unfitness for service, and alleged that the acts of moral turpitude warranted denial of his pending Application.

4

Hansen requested a hearing to challenge the Accusation. The matter was heard at an administrative hearing before an ALJ.[4]

The ALJ analyzed the factors set forth in government regulations and case law that are relevant in evaluating an allegation of misconduct by the holder of an educational credential.[5] (Cal. Code Regs., tit. 5, § 80302, subd. (a); *Morrison v. State Bd. of Education* (1969) 1 Cal.3d 214, 229.) The ALJ found that, as Hansen's conduct occurred in 2011 through 2013 and in 2017, it was "unlikely that students or the educational community may have been adversely affected by his conduct or conviction." As to the crime's proximity, though the conduct occurred years earlier, Hansen was recently convicted and remained on probation at the time of the 2022 administrative hearing.

---

[4]    A contested case may be heard by the agency itself or by an ALJ, at the discretion of the agency. (Gov. Code, § 11517, subd.(a).)

[5]    These include:
"(1) The likelihood that the conduct may have adversely affected students, fellow teachers, or the educational community, and the degree of such adversity anticipated;
(2) The proximity or remoteness in time of the conduct;
(3) The type of credential held or applied for by the person involved;
(4) The extenuating or aggravating circumstances surrounding the conduct;
(5) The praiseworthiness or blameworthiness of the motives resulting in the conduct;
(6) The likelihood of the recurrence of the questioned conduct;
(7) The extent to which disciplinary action may inflict an adverse impact or chilling effect upon the constitutional rights of the person involved, or other certified persons;
(8) The publicity or notoriety given to the conduct." (Cal. Code Regs., tit. 5, § 80302, subd. (a).) The ultimate question is "the relationship between the alleged misconduct and the applicant's or [credential]holder's fitness, competence, or ability to effectively perform the duties authorized by the credential." (*Ibid.*)

In aggravation, though Hansen resigned from his firm in 2013 when he learned the transactions were illegal, in 2017 he again engaged in activity which he acknowledged was illegal. The ALJ believed Hansen tried to minimize the severity of his transgressions by characterizing his illegal conduct as a "blemish" and "taking a 'shortcut.' " In mitigation, the ALJ acknowledged that since his criminal conduct, Hansen had earned his bachelor's and master's degrees, obtained his teaching credential and was working as a special education teacher and coach. But his motives were purely financial and thus blameworthy. The ALJ found it unlikely that the misconduct would occur again because Hansen had been barred from trading securities.

The ALJ ultimately substantiated two of the four allegations in the Accusation: that Hansen committed acts of unprofessional conduct and immoral conduct when he violated securities laws and received about $77,000 in illegal share sale proceeds. The ALJ found unsubstantiated the allegation that Hansen committed acts of moral turpitude, and concluded there was no relationship between Hansen's misconduct and his lack of fitness to effectively perform the duties authorized by his Certificate and Credential. The ALJ concluded that the facts warranted discipline, but not revocation, of Hansen's credentials.

The ALJ proposed that the Commission grant Hansen's Application for the five-year education specialist credential, revoke that credential and his existing Intern Credential, and immediately stay the revocation. The ALJ further proposed that the Commission place Hansen's credentials on probation for five years subject to a list of conditions, including cooperation with the Commission, regular interviews and reports to the Commission, and notice of his probationary status to his employers.

6

The Commission rejected the ALJ's proposed decision.[6] In additional submissions, the Attorney General, on behalf of the Complainant, challenged the ALJ's findings that Hansen's convictions for securities fraud were not acts of moral turpitude and that Hansen remained fit to teach. For his part, Hansen disputed the ALJ's characterization of his conduct as aggravated and emphasized his fitness for service and rehabilitation, but ultimately urged the Commission to accept the ALJ's proposed decision.

The Commission issued a final decision, effective November 2022, that included additions and amendments to the ALJ's factual findings and legal conclusions. The Commission concluded three of the four causes for discipline had been substantiated: unprofessional conduct, immoral conduct, and acts of moral turpitude. The Commission concluded the Attorney General had not demonstrated that Hansen was unfit to serve due to a "temperamental defect" or other "fixed character trait," but had demonstrated "a relationship between [Hansen's] misconduct and his lack of fitness to effectively perform the duties authorized by his credential and certificate." The Commission revoked Hansen's Certificate and Intern Credential and denied his Application.

Hansen filed a petition for writ of administrative mandate in the superior court. The superior court ordered the Commission to stay the order of revocation while it considered the writ petition.

Ultimately the superior court denied Hansen's petition. Reviewing using its independent judgment, the court concluded that "the weight of the

_____

[6]     After an ALJ hears the case, he or she prepares a proposed decision in a form that may be adopted by the agency as its final decision in the case. (Gov. Code, § 11517, subd. (c)(1).) The agency may thereafter adopt the ALJ's proposed decision in its entirety, adopt it with changes, or reject it and conduct further proceedings. (Gov. Code, § 11517, subd. (c)(2).)

7

evidence supports [the Commission's] decision revoking [Hansen]'s certifications." The court added that while it could "easily conclude the revocation decision constitutes an overly harsh penalty," the court recognized it "cannot substitute its own discretion for that exercised by the administrative agency. Reasonable minds can differ as to the propriety of revocation, but the administrative record confirms that [the Commission] acted within its discretion." The court took special notice of the "the undisputed contention that [Hansen] continues to competently teach special education students and coach high school sports," but acknowledged again it "is not free to substitute its opinion for that of the Commission," and that "[a]fter an independent review, it cannot be concluded that the administrative record does not contain evidence supporting the revocations ordered by the Commission."

Hansen timely appealed. We granted Hansen's request for a stay of the Commission's decision pending resolution of this appeal.

DISCUSSION

A. *Legal Principles*

A petitioner may file a writ of administrative mandamus to challenge the validity of a final administrative order or decision. (Code Civ. Proc., § 1094.5.) The basis for the challenge may extend to whether the agency has proceeded without, or in excess of, jurisdiction; whether there was a fair trial; and whether there was any prejudicial abuse of discretion. (Code Civ. Proc., § 1094.5, subd. (b).) Abuse of discretion is established if the order or decision is not supported by the findings, or the findings are not supported by the evidence. (*Ibid.*)

The superior court reviews the record employing either an independent judgment standard or substantial evidence standard. (Code Civ. Proc.,

8

§ 1094.5, subd. (c); *Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 811 (*Fukada*).)

"When an administrative decision substantially affects a fundamental vested right, such as the revocation of a professional license, the independent judgment standard of review applies. [Citations.] The superior court must examine the administrative record for errors of law and exercise its independent judgment upon the evidence." (*Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 967, fn. 1 (*Evans*); see also *Frink v. Prod* (1982) 31 Cal.3d 166, 175 (*Frink*) ["Once the agency has initially exercised its expertise and determined that an individual fulfills the requirements to practice his profession, the agency's subsequent revocation of the license calls for an independent judgment review of the facts underlying any such administrative decision."].)

An exercise of independent judgment requires the trial court to reweigh the evidence and examine the credibility of witnesses. (*Barber v. Long Beach Civil Service Com.* (1996) 45 Cal.App.4th 652, 658.) In this process, however, the administrative agency's decision is entitled to a "strong presumption of correctness," and the party challenging the administrative decision bears the burden of convincing the court that the agency's findings are contrary to the weight of the evidence. (*Fukada, supra,* at p. 817.)

Under the substantial evidence standard, which applies to administrative decisions that do not affect a fundamental right, the superior court does not reweigh the evidence presented at the administrative level but instead determines whether the administrative decision is supported by substantial evidence in light of the whole record. (Code Civ. Proc., § 1094.5, subd. (c); *Fukada, supra,* 20 Cal.4th at p. 811.)

9

If the superior court concludes that the agency properly found misconduct, the appropriate penalty for that misconduct is left to the sound discretion of the agency and will not be disturbed in mandamus proceedings absent an abuse of discretion. (*Spanner v. Rancho Santiago Community College Dist.* (2004) 119 Cal.App.4th 584, 591 (*Spanner*) [trial court "may not exercise its independent judgment when reviewing the penalty"]; see also *Dresser v. Bd. of Medical Quality Assurance* (1982) 130 Cal.App.3d 506, 510 (*Dresser*) ["In cases involving the Board's decision to revoke a professional license, the independent judgment standard is the standard to be used by the superior court except as to the determination of the penalty imposed."].)

On appeal, regardless which test the superior court applied, we review for substantial evidence to support the superior court's determination. (*Fukada, supra*, 20 Cal.4th at p. 824.) Because judgments of the trial court are presumed to be correct, the appellant bears the burden to affirmatively demonstrate error and must show that the error was prejudicial. (*Ibid.*) " '[O]ur function on appellate review is solely to decide whether credible, competent evidence supports that court's judgment.' " (*Shenouda v. Veterinary Medical Bd.* (2018) 27 Cal.App.5th 500, 512 (*Shenouda*).) If the record contains facts to support the judgment, we must affirm. (*Ibid.*)

B. *Analysis*

1. *Standard of Review in the Trial Court*

As an initial matter, we conclude that the trial court applied the correct legal standards in its review of the Commission's decision. The trial court properly reviewed the Commission's findings using its independent judgment, while affording a "strong presumption of correctness" to the Commission's decision (*Fukada, supra*, at pp. 811-812), and properly reviewed the

10

Commission's determination of the appropriate penalty for abuse of discretion. (*Spanner, supra*, 119 Cal.App.4th at p. 591.)

The Attorney General contends that the trial court only needed to apply the substantial evidence standard, citing *Flanzer v. Bd. of Dental Examiners* (1990) 220 Cal.App.3d 1392, 1396 (*Flanzer*). But *Flanzer* concerned the standard of review for an applicant seeking to reinstate a professional license that had already been revoked, who, the *Flanzer* court reasoned, "is in the same position as a person seeking a license in the first place," and thus entitled only to substantial evidence review. (*Ibid*.)

Hansen had already been granted a Certificate and Intern Credential. While these had expired while Hansen's Application was pending, the Commission chose as part of its discipline to revoke "all teaching credentials and certificates issued to" Hansen, citing its authority to take disciplinary action even against an expired credential. (Ed. Code, § 44440, subd. (a).) While it also denied Hansen's Application, the Commission's reasoning focused primarily, if not exclusively, on the grounds for adverse action against Hansen's credentials. The Commission relied upon its findings of unprofessional conduct, immoral conduct, and acts of moral turpitude to justify revocation of Hansen's credentials, while citing only the acts of moral turpitude to deny the Application.[7] Since the Commission chose to impose

---

[7] The Commission relied on the same factor–its finding of acts of moral turpitude–to support both adverse action against Hansen's credentials and denial of the Application. Consequently, we need not decide if a hybrid approach would have been necessary: that is, independent judgment review of the revocation of the credentials as a decision implicating a fundamental vested interest, and review of denial of the Application for substantial evidence. Once the trial court affirmed the Commission's findings using its independent judgment, those same findings, including as to moral turpitude, would necessarily have withstood substantial evidence review.

11

discipline on Hansen's expired but unsullied credentials, Hansen was not solely a person seeking a license in the first place, and it would seem to us that that the heightened standard for an agency decision that implicates a vested fundamental right should apply. (See *Evans*, *supra*, 21 Cal.App.4th at p. 967, fn. 1; *Dresser, supra,* 130 Cal.App.3d at p. 510; *Frink, supra,* 31 Cal.3d at p. 175; *Housman v. Board of Medical Examiners* (1948) 84 Cal.App.2d 308, 312).

    2. *Hansen*'s *Challenges*

On appeal, Hansen contends that the Commission abused its discretion in rejecting the ALJ's proposal and revoking his credentials based on "aggravating factors" that were not supported by the evidence. He concedes that his conduct was "undoubtedly unprofessional" but argues it should not be considered immoral. He asserts that the ALJ correctly concluded his conduct did not amount to acts of moral turpitude. And because the conduct occurred before Hansen began teaching, he avers, the finding of harm to students was unsupported. Moreover, there was evidence that Hansen's violation could not be repeated. Hansen recites facts in mitigation, including his many volunteer hours promoting youth programs and coaching student athletes, endorsements by educational professionals as to his dedication and fitness as a teacher, and his leadership roles within the school and community.[8] He concludes that to "exile" such a person from a career in teaching "is the very definition of an arbitrary decision."

---

[8]    Hansen provided no citations to the record for most of these statements. He refers to a document–a 2024 performance evaluation by the principal of his current school–that is not properly part of the record. We grant the Attorney General's motion to strike pages 200-201 of Hansen's appendix, which were not part of the record below.

12

To begin with, we review the correctness of the trial court's ruling, not the underlying agency's decision. (*Shenouda, supra,* 27 Cal.App.5th at p. 512.) Accordingly, we do not assess anew Hansen's challenges to the Commission's decision, but consider his arguments only in evaluating whether there was substantial evidence to support the trial court's ruling.

Second, Hansen fails to support those arguments with sufficient citations to the record or to legal authorities. His three citations point to: a document that is not properly part of the record, the ALJ's proposed decision that the Commission opted not to follow, and dictum[9] of the superior court. It is a "cardinal rule of appellate review that a judgment or order of the trial court is presumed correct and prejudicial error must be affirmatively shown." (*Foust v. San Jose Construction Co., Inc.* (2011) 198 Cal.App.4th 181, 187.) The "appellant must affirmatively demonstrate error through reasoned argument, citation to the appellate record, and discussion of legal

We deny the motion to strike as to Hansen's appendix pages 1 through 136 and writ exhibits 1 through 19. While Hansen's appendix 1 through 136 may duplicate some portions of the administrative record, an administrative record must ordinarily be transmitted directly to the court and not included in an appendix (Cal. Rules of Court, rule 8.124(b)(3)), we have already granted the Attorney General's motion to file a duplicate administrative record that contains pagination, and to augment the record with several pleadings filed in superior court. The Attorney General contends that 1 through 19 are nonrecord items since they were "[n]ot introduced or admitted at administrative hearing nor during writ proceedings at trial court." But the register of actions reflects that these pages, which comprise Hansen's exhibits in support of his amended writ petition, were filed in the superior court writ proceedings in July 2023. (See also Cal. Rules of Court, rule 8.124(b)(4) [exhibits are deemed part of the record, whether or not the appendix contains copies of them].)

9       Statements that are not necessary to the determination of a case are dictum and lack precedential impact. (*United Steelworkers of America v. Board of Education* (1984) 162 Cal.App.3d 823, 834-835.)

authority." (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685.) When a party makes an assertion but fails to support it with reasoned argument and citation to authority, the assertion may be treated as waived. (*Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

Third, even were Hansen's arguments not waived by his failure to adequately support them, we conclude that substantial evidence supports the trial court's ruling after its independent judgment review that the Commission did not abuse its discretion. While the trial court did not expound greatly on its reasoning, it had "carefully reviewed the administrative record" to conclude that the weight of the evidence supported the Commission's decision.

Our own review of the record supports this conclusion. The record primarily consisted of: Hansen's statements to the Commission, both in correspondence and under oath at the administrative hearing; endorsement letters submitted by Hansen; and the records of the federal civil and criminal cases, including the admissions Hansen made in his plea agreement. Hansen raised no objection to these documents at the administrative hearing and does not challenge their authenticity or reliability on appeal. Hanson instead appears to challenge how the Commission applied the agreed-upon evidence to the statutory factors for discipline.

The credible and competent evidence in the record supported the trial court's ruling affirming the Commission's decision, including as to each of the Commission's findings Hansen now challenges on appeal. In his criminal plea agreement, Hansen admitted that he concealed information from his brokerage firm to effectuate the transactions in 2011 to 2013, and falsely represented that he qualified for a registration exemption in 2017 by concealing his coordination with his coconspirators and his intentions for the

14

proceeds. The same plea document recites the elements of securities fraud, which include the element that the defendant "willfully used a device or scheme to defraud someone, made an untrue statement of material fact, failed to disclose a material fact that resulted in making the defendant's statement's misleading, or engaged in any act, practice, or course of business that operated or would operate as a fraud or deceit upon any person." While he argues that the conduct was not moral turpitude in the absence of malice or theft, and "returning capital to help the company succeed cannot be reasonably considered immoral," the statements in his plea agreement and his criminal convictions for offenses requiring fraud or deceit are substantial evidence supporting the conclusion that Hansen's acts amounted to immoral conduct and acts of moral turpitude. (*Golde v. Fox* (1979) 98 Cal.App.3d 167, 185 ["moral turpitude is inherent in crimes involving fraudulent intent, intentional dishonesty for purposes of personal gain or other corrupt purpose"]; *In re Hallinan* (1954) 43 Cal.2d 243, 247 ["a crime in which an intent to defraud is an essential element is a crime involving moral turpitude"]; *Palo Verde etc. Sch. Dist. v. Hensey* (1970) 9 Cal.App.3d 967, 972 [immoral conduct includes "conduct inconsistent with rectitude, or indicative of corruption," or that showing "an inconsiderate attitude toward good order and the public welfare."].)

Although the conduct occurred before Hansen began teaching, sufficient evidence supports the Commission's reasoning that if students or fellow teachers learned of Hansen's criminal conduct, they could question whether Hansen was honest and truthful in his dealings with them. Hansen himself agreed in his testimony that teachers need to set a positive example for students and the Commission has a duty to ensure people holding credentials are trustworthy people.. Teaching imposes greater

15

"responsibilities and limitations on freedom of action" upon its practitioners compared to other professions, and an individual's "ability to inspire children and to govern them, his power as a teacher, and the character for which he stands are matters of major concern in a teacher's selection and retention." (*San Diego Unified School Dist. v. Commission on Professional Competence* (2011) 194 Cal.App.4th 1454, 1463.) This accepted view of teachers as role models with influence over students, and Hansen's convictions for fraud which are a matter of public record, supply substantial evidence to support the Commission's inference that students or staff would be impacted to learn that a trusted coach, teacher, and faculty leader was a felon for crimes involving dishonesty and deceit. (See *id*. at p. 1461 [on review, we give the prevailing party the benefit of every reasonable inference from the evidence].)

And while Hansen was barred from trading securities, substantial evidence supported the Commission's broader concern that his crimes presented the risk that Hansen would again engage in unprofessional and immoral conduct and acts of moral turpitude, which are not limited to the sphere of securities trading. The evidence supporting this conclusion included that Hansen engaged in fraudulent conduct in 2017 even after learning the transactions from 2011 through 2013 were illegal. Hansen also characterized the crime in ways that the Commission and ALJ interpreted as an effort to minimize the severity of his conduct. All of this created the risk he could engage again in something similar.

Finally, the Commission acknowledged and did not ignore the mitigating circumstances that Hansen recites again in his appeal.

Once the trial court concluded after its independent review that grounds existed for discipline of Hansen's credential, it appropriately deferred to the Commission to choose the appropriate sanction. The

16

Commission, carrying out its statutory responsibility to identify and impose discipline for educator misconduct (Ed. Code, § 44000.5) and with the expertise of its constituent members,[10] analyzed Hansen's crimes, drew reasonable inferences from the evidence, and weighed the aggravating and mitigating factors, to decide that revocation of his credentials and denial of his Application were the appropriate penalty. The SEC saw fit to enjoin him from securities trading for his conduct, and we cannot say it was an abuse of discretion for the Commission to enjoin him from teaching. As discussed above, substantial evidence supports this conclusion.

---

[10] The Commission's 15 voting members include a school superintendent, six practicing teachers from public elementary and secondary schools, one member of the governing board of a school district, school administrators, one college faculty member, and three representatives of the public. Members must be drawn from different school districts around the state. (Ed. Code, § 44210 (a), (c).)

DISPOSITION

The judgment is affirmed. Respondent is entitled to costs on appeal. (Cal. Rules of Court, rule 8.278(a)(2).)


O'ROURKE, Acting P. J.

WE CONCUR:


KELETY, J.


RUBIN, J.