Filed 7/20/21  Stengell v. Cal. Dept. of Business Oversight CA2/4

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| STEVE S. STENGELL, | B304525 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS174621) |
| v. | |
| CALIFORNIA DEPARTMENT OF BUSINESS OVERSIGHT et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Daniel S. Murphy and Mary H. Strobel, Judges.  Affirmed.

Baker Law Group and John H. Baker for Plaintiff and Appellant.

California Department of Financial Protection and Innovation, Manuel P. Alvarez, Mary Ann Smith and Jeremy F. Koo for Defendants and Respondents.

Steve S. Stengell appeals from a judgment denying his petition for writ of administrative mandamus.  His petition challenged the decision of the Commissioner of Business Oversight (Commissioner)[1] finding that Stengell committed six violations of Corporations Code[2] section 25401 and six violations of a prior order to desist and refrain from violations of section 25401.[3]  The violations involved misrepresentations and/or omissions in a confidential private placement memorandum (PPM) for prospective investors in an oil and gas exploration partnership called Grimes County #4.   Stengell contends on appeal that (1) the trial court erred by applying the substantial evidence standard of review, rather than the independent judgment test, in its review of Commissioner's decision; (2) none of the alleged misrepresentations or omissions in the PPM were material; (3) the trial court erred by denying Stengell's request that it take judicial notice of the date an investor filed a complaint regarding Grimes County #4 with the Department; and (4) laches bars Commissioner's order.  We conclude that we need

---

[1]     Commissioner is the head of the California Department of Business Oversight, which, as of September 29, 2020, is referred to as the Department of Financial Protection and Innovation.  (Stats. 2020, ch. 264, §§ 6, 32.)  We refer to either as "the Department."

[2]     Further undesignated statutory references are to the Corporations Code.

[3]     The version of section 25401 that was in effect at the time the acts were committed is virtually identical (with minor grammatical and punctuation changes) to the current version, which was in effect at the time the enforcement action was filed and heard.  (Compare Stats. 1968, ch. 88, § 2 (in effect from 1969 to 2013) with Stats. 2015, ch. 190, § 19.)

not decide which standard of review applied, because the trial court found it would reach the same result under either standard. We also conclude that the court did not abuse its discretion in denying Stengell's request for judicial notice, and that substantial evidence supports the court's rulings as to all issues.

## BACKGROUND

In February 2011, Allied Energy, Inc. (Allied Energy) issued a PPM offering for sale to accredited investors securities in the form of 75 units of partnership in Grimes County #4, a Kentucky general partnership. Allied Energy was the managing general partner of Grimes County #4. Stengell was the president and chairman of the board of directors of Allied Energy at the time the PPM for Grimes County #4 was issued.

In March 2011, Allen J. Ebens, Jr. received an unsolicited call at his office in California from Bill Moore, who introduced Ebens to Allied Energy and told him about the Grimes County #4 investment opportunity. Moore explained that Grimes County #4 was a gas drilling operation,[4] and told Ebens that if he wanted to purchase a unit, he would have to move quickly. Moore sent Ebens the PPM by Federal Express to his home in San Carlos, California. On March 26, 2011, Ebens purchased one unit in Grimes County #4, for $128,428.

---

[4]     Specifically, Grimes County #4 was an investment in a working interest in one horizontal well to be drilled in Grimes County, Texas.

On May 23, 2017, Commissioner issued a desist and refrain order and a notice of intention to issue an order levying administrative penalties against Stengell, other executives and/or directors of Allied Energy, and Allied Energy and its related entities. The desist and refrain order and statement in support of order levying administrative penalties alleged that Stengell and the other respondents had willfully violated section 25401, and had violated a desist and refrain order Commission had issued in 2007, by misrepresenting or failing to disclose certain material facts in connection with the offer and/or sale of securities (i.e., units in Grimes County #4) to at least one investor in California.[5]

Stengell and three of the individual respondents requested a hearing, which was held before an administrative law judge (ALJ). After a two-day hearing, the ALJ issued a proposed decision, with findings of fact and conclusions of law, affirming in part the desist and refrain order (the ALJ found that one of the alleged omissions did not constitute an omission of a material fact, but that the other alleged omissions were material) and affirming the order levying administrative penalties (although the ALJ reduced the amount of penalties). The ALJ rejected Stengell's argument that laches barred Commissioner's action, noting that "[t]he evidence presented did not establish when the Department was notified of respondents' misconduct" and that there was insufficient evidence to establish

---

[5]    We discuss the specific misrepresentations and omissions in section C. of the Discussion, *post*.

prejudice caused by the delay in bringing the enforcement action. Commissioner subsequently issued an order of decision, adopting the ALJ's proposed decision in full.

Stengell filed a petition for writ of administrative mandamus in the superior court. In his petition, Stengell alleged that laches barred the desist and refrain order and order levying administrative penalties, and that none of the alleged misrepresentations or omissions were actionable because there was no substantial likelihood that any of the omitted facts would have been viewed by a reasonable investor as important in deciding whether to invest. Stengell also asserted that Commissioner's order was subject to the trial court's independent judgment review, arguing that his fundamental vested right was at stake because the order will affect his ability to raise money in future oil and gas syndications.

The trial court held a trial setting conference three months after the petition was filed, during which counsel advised the court that the administrative record would be ready shortly. Four days later, Stengell filed a request for judicial notice, which attached a document that had not been included in the administrative record—an unauthenticated copy of a complaint filed by Ebens with the Department—and asked the court to take judicial notice of the date stamp on the document. The court did not immediately rule on Stengell's request, deferring its ruling until submission of the entire matter.

In his opening brief on the petition, Stengell argued (1) the trial court should exercise its independent review in reviewing Commissioner's orders because Stengell's fundamental right is at stake;

5

(2) none of the alleged misrepresentations or omissions were material; and (3) laches barred Commissioner's action. The Department and Commissioner argued that the independent judgment standard of review did not apply, that the ALJ's decision was supported by sufficient findings, and that those findings (including the findings regarding materiality) were supported by substantial evidence.[6] The Department and Commissioner also argued that laches did not apply against an administrative action to enforce a statutory scheme designed to protect the public, and that even if it could apply, Stengell did not cite to any admitted evidence sufficient to meet his burden of proof. The Department and Commissioner noted that although Stengell filed a request for judicial notice, he did not move to augment the administrative record with the requested document. In his reply, Stengell asserted that he was not required to move to augment the record in light of his request for judicial notice.

Following a hearing, the trial court (Judge Daniel S. Murphy, presiding) issued a detailed ruling. The court first addressed Stengell's request for judicial notice of the complaint Ebens filed with the Department and the date stamp on the complaint. The court found that by filing a request for judicial notice, Stengell impliedly sought to augment the administrative record without making a proper motion to augment under Code of Civil Procedure section 1094.5, subdivision (e),

---

[6] Although the relevant review is of *Commissioner's* findings and decision, since Commissioner adopted the ALJ's proposed decision in full, we will refer to the ALJ's findings and decision.

6

and that he failed the make the required showing under that statute that the Ebens complaint could not have been produced or was improperly excluded in the administrative proceedings. In any event, the court found that Stengell failed to provide sufficient foundation for his request for judicial notice because neither the complaint nor the date stamp were authenticated. Therefore, the court denied Stengell's request.

The court also rejected Stengell's assertion that the independent judgment test applied to its review of Commissioner's decision, finding that although the decision limits Stengell's ability to offer and sell securities in California, Stengell failed to show, with citations to the record, that the decision would destroy any business in which he was involved or prevent him from engaging in a profession. Therefore, the court concluded that the substantial evidence test applied.

Addressing Stengell's laches argument, the court rejected Stengell's request that the court make an independent ruling on laches, noting that the court's inquiry on a petition under Code of Civil Procedure section 1094.5 is whether Commissioner and/or the Department prejudicially abused their discretion in finding that laches did not bar the administrative action. The court observed that none of the statements Stengell relied upon to try to establish when the Department was first notified of the alleged misconduct was admitted as evidence at the administrative hearing, and that Stengell also presented no evidence to establish he was prejudiced by the delay in bringing the charges. Therefore, the court found that substantial evidence supported Commissioner's conclusion that the administrative

7

action was not barred by laches. The court also found that even if the independent judgment test applied, the weight of the evidence supported the conclusion that the action was not barred.

The court then examined each of the misrepresentations or omissions Commissioner/the ALJ found to be material and concluded that Commissioner/the ALJ made sufficient findings in support of the materiality determinations, and that substantial evidence supported those findings. The court also observed that even if the independent judgment test applied, it found that the weight of the evidence supported the findings regarding the material misrepresentations or omissions.

The trial court (Judge Mary H. Strobel, presiding) subsequently entered judgment denying the petition for writ of administrative mandamus, from which judgment Stengell timely filed a notice of appeal.

## DISCUSSION

As noted, Stengell raises four issues on appeal. We first address his contention that the trial court applied the incorrect standard of review in its review of Commissioner's decision. Next, we address his contentions that the trial court erred by denying his request for judicial notice and by rejecting his assertion that laches bars Commissioner's action. Finally, we examine whether the trial court's decision upholding Commissioner's findings that the misrepresentations and/or omissions in the PPM were material is supported by substantial evidence.

8

A.    *Standards of Review*

    1.    *Standard of Review in Trial Court*

"'Under Code of Civil Procedure section 1094.5, there are two alternative standards of review that a trial court uses to review [challenges to an agency's factual findings raised by] a petition for writ of administrative mandamus. [Citation.] "If the administrative decision involved or substantially affected a 'fundamental vested right,' the superior court exercises its independent judgment upon the evidence . . . . [Citations.]" [Citations.] "Where no fundamental vested right is involved, the superior court's review is limited to examining the administrative record to determine whether the adjudicatory decision and its findings are supported by substantial evidence in light of the whole record."' [Citation.] 'Courts determine on a case-by-case basis whether a right is "vested" and "fundamental," taking into account both economic effects and effects "in human terms and the importance of [the right] to the individual in the life situation."' [Citation.] . . . "'[T]he ultimate question in each case is whether the affected right is deemed to be of sufficient significance to preclude its extinction or abridgement by a body lacking *judicial* power."' [Citations.]" (*Alpha Nu Assn. of Theta XI v. University of Southern California* (2021) 62 Cal.App.5th 383, 408-409 (*Alpha Nu*), fn. omitted.)

    Stengell contends the trial court erred by finding that Stengell's fundamental vested rights were not involved and concluding that Commissioner's decision should be reviewed under the substantial evidence standard of review. He argues (without citation to any evidence in the record) that his "right to make a living raising money in

9

the oil and gas business will be significantly abridged if not extinguished" if Commissioner's decision stands. Therefore, he argues the trial court should have examined the decision under the independent judgment standard of review.

We need not determine which standard of review was the appropriate standard—although we note that "'[c]ourts have rarely viewed purely economic interests, such as the right to profit under a particular business venture, as a fundamental vested right.'" (*Alpha Nu, supra*, 62 Cal.App.5th at p. 409; see also *Benetatos v. City of Los Angeles* (2015) 235 Cal.App.4th 1270, 1282 [city's imposition of conditions on operation of restaurant did not substantially affect any vested fundamental right held by restaurant's owners, where owners "suggested only an economic effect from the required operating conditions" and failed to demonstrate that the cost of the operating conditions would force them out of business].) That determination is unnecessary in this case because the trial court affirmed Commissioner's decision under *both* standards. The court initially found that the substantial evidence standard of review applied because Stengell failed to show, with citations to the record, that Commissioner's decision impacted his fundamental vested rights. But after conducting its substantial evidence analysis as to Commissioner's findings regarding laches and the material misrepresentations and/or omissions in the PPM, the court *also* found that, under the independent judgment standard of review, the weight of the evidence supported Commissioner's findings and conclusions as to each issue. Therefore,

there is no basis for Stengell's contention that the trial court applied an incorrect standard of review.

### 2. *Standard of Review in This Court*

On appeal, the appellate court reviews the trial court's ruling on a petition for administrative mandamus under the substantial evidence test, regardless of the standard of review the trial court was required to apply in its review of the administrative decision. (*Fukuda v. City of Angels* (1999) 20 Cal.4th 805, 824; *Shenouda v. Veterinary Medical Bd.* (2018) 27 Cal.App.5th 500, 512 (*Shenouda*).) "Our focus is on the *trial court's* findings. [Citation.] '[O]ur function on appellate review is solely to decide whether credible, competent evidence supports that court's judgment.' [Citation.] . . . [¶] Because judgments of the trial court are presumed to be correct, the appellant bears the burden to affirmatively demonstrate error, and must show that the error was prejudicial. [Citations.]" (*Shenouda, supra*, 27 Cal.App.5th at p. 512.)

### B. *Denial of Request for Judicial Notice and Ruling on Laches*

In the administrative proceedings, the ALJ rejected Stengell's laches defense on two grounds. First, the ALJ found that the evidence that was presented did not establish when the Department was notified of Stengell's misconduct, and there was no evidence that Commissioner could have acted in 2011, when the security was offered and sold to Ebens. The ALJ noted in this regard that the purported evidence Stengell cited to (testimony by Commissioner's counsel in the reporter's

11

transcript and counsel's declaration in support of costs and attorney fees) were not admitted as evidence; the testimony was stricken at the hearing and the declaration was withdrawn. Second, the ALJ found there was insufficient evidence that the delay in bringing the enforcement action prejudiced Stengell.

Stengell filed a request for judicial notice in the trial court in an attempt to fill the evidentiary gap with regard to the ALJ's first ground, asking the court to take judicial notice of a document, and the date stamp on the document, that he stated was the complaint Ebens filed with the Department; he provided no information about how or when he obtained the document. Stengell then relied upon that document, as well as the unadmitted evidence he relied upon in the administrative proceedings, to ask the trial court to independently rule that laches barred Commissioner's enforcement action. The court denied Stengell's request for judicial notice and found that both substantial evidence and the weight of the evidence before the ALJ supported the conclusion that Commissioner's action was not barred by laches. Stengell challenges both rulings on appeal.

1. *Denial of Request for Judicial Notice*

In denying Stengell's request for judicial notice, the trial court cited three grounds. First, the court noted that through his request, Stengell impliedly sought to augment the administrative record, but he did not make a motion to augment as required by Code of Civil Procedure section 1094.5, subdivision (e). Second, the court observed that Stengell did not show that the document at issue could not have

12

been produced in or was improperly excluded from the administrative proceedings, as required by that statute. Third, the court found that Stengell did not provide sufficient foundation to establish the authenticity of the document or the file stamp.

In his appellant's opening brief, Stengell addresses only the first and third grounds for the trial court's denial of his request for judicial notice; he fails to address the second ground and the requirements of Code of Civil Procedure section 1094.5, subdivision (e). That provision states: "Where the court finds that there is relevant evidence that, in the exercise of reasonable diligence, could not have been produced or that was improperly excluded at the hearing before [the administrative body], it may enter judgment [commanding that body to set aside the order or decision and] remanding the case to be reconsidered in the light of that evidence; or, in cases in which the court is authorized by law to exercise its independent judgment on the evidence, the court may admit the evidence at the hearing on the writ without remanding the case."

There is no question that Stengell did not (and does not) make any attempt to show that the document in question could not have been produced at the administrative hearing or was improperly excluded from that hearing. Instead, Stengell simply argues that, under *Harris v. Alcoholic Bev. etc. Appeals Bd.* (1965) 62 Cal.2d 589 (*Harris*), the trial court may take judicial notice of the document even though it was not made part of the administrative record through a motion to augment. *Harris* does not assist Stengell.

13

In *Harris*, the issue before the Supreme Court was whether the failure to make a document a part of the administrative record *precludes* the reviewing court from taking judicial notice of the document. (*Harris, supra*, 62 Cal.2d at pp. 595-596.) In analyzing the issue, the court examined Government Code section 11515, which provides in relevant part that "[i]n reaching a decision [in an administrative adjudication] official notice may be taken, either before or after submission of the case for decision, of any generally accepted technical or scientific matter within the agency's special field, and of any fact which may be judicially noticed by the courts of this State." The Supreme Court found there was nothing in the language of that statute "indicating that failure to take official notice of a matter precludes a court from taking judicial notice of it." (*Harris, supra*, 62 Cal.2d at p. 596.)

This holding has no relevance to the present case because the trial court did not find it was precluded from taking judicial notice of a document that was not included in the administrative record. Instead, it found that Stengell did not make the showing required under Code of Civil Procedure section 1094.5, subdivision (e), for the court to consider extra-record evidence, an issue the Supreme Court did not address in *Harris*. The language of that provision does not distinguish between evidence that is submitted to the court on a motion to augment the administrative record or on a request for judicial notice: the statute provides that the trial court many only consider extra-record evidence if it finds that, in the exercise of reasonable diligence, the evidence could not have produced at the administrative hearing or it was improperly

14

excluded at the hearing.  Because Stengell failed to establish that the document at issue could not have been produced at or was improperly excluded from the administrative hearing, we conclude the court did not abuse its discretion by denying Stengell's request for judicial notice.

2. *Ruling on Laches*

When arguing in the trial court that laches barred the enforcement action, Stengell entirely ignored the ALJ's findings and conclusions—and the record that was before the ALJ—and asked the court to find independently that laches barred the action.  The court declined Stengell's invitation, and reminded him that the inquiry under Code of Civil Procedure section 1094.5 is whether Commissioner and the Department prejudicially abused their discretion.  In his appellant's opening brief, Stengell once again ignores both the findings of the ALJ, as well as those of the trial court and the limits of our review.   We reiterate:  on review of the judgment on a petition for administrative mandamus, our focus is on the trial court's findings, and we must uphold those findings if they are supported by credible, competent evidence.  (*Shenouda, supra*, 27 Cal.App.5th at p. 512.)

As the trial court observed, to prevail on a laches defense, the defendant must prove that the plaintiff unreasonably delayed in bringing the action and either that the plaintiff acquiesced in the act at issue or that the defendant was prejudiced as a result of the delay. (*Mercury Ins. Co. v. Lara* (2019) 35 Cal.App.5th 82, 110; *Womack v. San Francisco Community College Dist.* (2007) 147 Cal.App.4th 854, 865.) Where a defendant invokes a laches defense against a governmental

15

entity, a higher standard applies, and the defense is not available if it would "'defeat the effective operation of a policy adopted to protect the public.'" (*Kajima/Ray Wilson v. Los Angeles County Metropolitan Transportation Authority* (2000) 23 Cal.4th 305, 316.)

Here, the trial court found there was no competent evidence submitted in the administrative proceeding to establish when the Department was notified of Stengell's misconduct, and therefore Stengell failed to prove unreasonable delay. In addition, the court found that Stengell failed to cite to any evidence that would support a finding of prejudice; the court rejected Stengell's assertion that prejudice could be presumed based upon the statutes of limitation in Corporation Code sections 25535, 29553, and 25506 because he failed to show those statutes were analogous to the statutes relied upon by Commissioner in this case (and because there was no evidence to establish when those limitations statutes expired). Finally, the court rejected Stengell's argument that the Department acquiesced in the wrongful acts. The court noted that the acquiescence argument required Stengell to establish *with evidence* the date the Department discovered the wrongful acts, which Stengell had not done. And in any event, the court concluded that even if a date of discovery were assumed, that would not establish acquiescence in light of the important public policy of investor protection underlying the Corporate Securities Law. Therefore, the court found that substantial evidence and the weight of the evidence supported Commissioner's conclusion that the enforcement action was not barred by laches.

16

We need to look no farther than the first element of the laches defense to affirm the trial court's ruling. To establish unreasonable delay (or acquiescence), Stengell must establish—with *evidence that was admitted* at the administrative hearing—the date the Department was put on notice that there were misrepresentations and/or omissions in the PPM. He cites to no such evidence, and we have found none. Therefore, we conclude that substantial evidence supports the trial court's ruling regarding laches.

C.      *Findings of Material Misrepresentations and/or Omissions*

1.      *Background*

Section 25401 provides: "It is unlawful for any person to offer or sell a security in this state, or to buy or offer to buy a security in this state, by means of any written or oral communication that includes an untrue statement of a material fact or omits to state a material fact necessary to make the statements made, in the light of the circumstances under which the statements were made, not misleading." Commissioner alleged that Allied Energy, Stengell, and others violated section 25401 by misrepresenting or omitting to disclose, in connection with their offers or sales of units in Grimes County #4, material information regarding prior seven prior administrative proceedings in several states (including California). Those misrepresentations or omissions related to the "LITIGATION" section in the PPM that was sent to Ebens when he was considering purchasing a unit in Grimes County #4.

17

At the beginning of the "LITIGATION" section, the PPM stated: "There is no pending or threatened litigation against Allied's net worth that would affect its ability to function as the managing partner or its ability to absorb any potential losses in the drilling or development of the program well(s)." The PPM then provided what it stated were "disclosures . . . relevant to the last five (5) years involving Allied Energy." Those disclosures described eight administrative proceedings that had been brought against Allied Energy and/or its affiliates in several states. The section ended with a statement indicating that copies of the listed proceedings could be made available for inspection at the company's offices, and inviting prospective investors to ask questions or request information from Allied Energy about the proceedings.

Commissioner alleged that the PPM failed to fully disclose material information with regard to six of those described administrative proceedings and failed to disclose at all an additional proceeding. The ALJ found that the omitted information regarding one of the proceedings was not material, but found the remaining misrepresentations and/or omissions were material; the trial court concluded that substantial evidence, and the weight of the evidence, supported the ALJ's findings. We set forth below, for each of the proceedings alleged to have been insufficiently disclosed, the description in the PPM (if any) and the ALJ's findings.

a. *Texas Order*

The PPM stated, in relevant part: "The Texas Securities Board (TSB), a state agency, issued a Cease and Desist Order (administrative order) which was later amended to an Agreed Cease and Desist Order against the Chaucer Fredricksburg Prospect (previous drilling program sponsored by the Managing General Partner) defining the offering as a 'security' and challenging the program's 'exemption from registration' as set forth by State and Federal securities laws (Regulation D). Allied vigorously responded to this order, claiming the right to an exemption from registration under Federal Regulation D Rule 506. In April 2004, the Managing General Partner, having a good and valid defense, reached a settlement agreement with the TSB to resolve this matter. As a result of this order and settlement agreement, the Texas Securities Board required the Managing General Partner to pay an $8,000 administrative fine." The PPM then discussed the success of the drilling operations.

The ALJ found that the order (the Texas Order), which contained findings of fact and conclusions of law, involved an offering of securities, issued by predecessors to Allied Energy, in a natural gas venture; Stengell served on the advisory board to one of the predecessors. The Texas Order found that the securities were offered and/or sold by unregistered dealers or agents through materially misleading statements likely to deceive the public. The ALJ found that the PPM did not fully disclose the Texas Order because it failed to disclose that (1) the Texas Order involved unregistered securities sold or offered by materially misleading statements; and (2) there was a finding against

19

predecessors to Allied Energy for offering securities by materially misleading statements. In addition, the ALJ observed that Allied Energy (and Stengell) should have fully disclosed the Texas Order because Commissioner had determined in the 2007 California Order discussed in section C.2.g., *post*, that they had not fully disclosed the Texas Order.

Finally, the ALJ found that "[t]he fact that a principal of Grimes County #4, like respondent Stengell, was involved with a company that was found to have violated similar business laws in Texas is an important fact to an investor when deciding whether or not to invest. This is especially true when the type of business enterprise, such as speculation in oil and/or gas wells, is the same, and there are findings of securities being sold or offered by materially misleading statements." Therefore, the ALJ found that the omissions were material.

### b. *Pennsylvania Order*

The second failure to disclose involved a regulatory order issued by the Pennsylvania Securities Commission in November 2003 (the Pennsylvania Order), which the PPM did not discuss at all. The ALJ noted that the Pennsylvania Order found that securities issued by Sunclear Energy, Inc. in oil and/or gas ventures were offered and/or sold by that company and others through materially misleading statements, and that Stengell was the vice president of investor relations for Sunclear Energy, Inc. at that time. Stengell, who consented to the issuance of the Pennsylvania Order's findings of fact and conclusions of law was (1) barred from offering or selling securities in Pennsylvania

without retaining knowledgeable counsel for six months; (2) ordered to pay costs of $1,000; and (3) ordered to permanently cease and desist from violating the Pennsylvania Securities Act of 1972. The ALJ also observed that Stengell should have made a full disclosure of the Pennsylvania Order in the PPM because Commissioner previously had determined in the 2007 California Order that he had not completely disclosed the Pennsylvania Order.

Addressing the materiality of the omission, the ALJ found that "[t]he details in the Pennsylvania Order are the type of information that would assist a reasonable investor in deciding whether to invest in Grimes County #4 and whether the management (like the managing general partners of Grimes County #4) is following the law in marketing the securities. The fact that a principal, respondent Stengell, was barred from offering or selling securities in a particular state for a period of time, and ordered to pay costs, is an important fact to an investor when deciding whether or not to invest." Therefore, the ALJ concluded the omission was material.

c. *Kentucky Complaint*

The PPM stated: "The Division of Securities of the Commonwealth of Kentucky brought an administrative complaint against Allied Energy, County Line Prospect, and others alleging that the offering memorandum involving County Line Prospect had various items which, in the opinion of the Division, should have been disclosed, some areas of correction and areas which in the opinion of the Division, should be expanded. The offering memorandum and other third party

21

materials (geology and independent audit reports) included in the offering memorandum not only set forth the risks of the prospect but also accurately and correctly stated risks. In March 2007, the respondents and the Division reached an agreed settlement to resolve this matter in which the Managing General Partner paid a civil fine of $50,000."

The ALJ noted that this complaint (the Kentucky Complaint) alleged that the predecessor to Allied Energy, Stengell, and others were offering and selling partnership interests in oil and/or gas well ventures through multiple materially misleading statements or omissions. In the settlement agreement and final order, Stengell and the others were ordered to offer rescission to all non-accredited investors to rectify the inadequate disclosures, and were collectively assessed a civil fine of $25,000 (of which $15,000 was suspended on condition that they complied with the settlement and did not commit future violations of federal or state securities laws). The settlement agreement also indicated that Stengell's culpability for the material errors or omissions in the offering was based on his position as the senior vice president of operations of the offering company.

The ALJ found that the PPM did not fully disclose the Kentucky Complaint because it failed to disclose that (1) the complaint involved securities sold or offered through materially misleading statements; (2) the complaint was brought against Stengell as well as a predecessor to Allied Energy; and (3) Stengell was found to be culpable. The ALJ concluded that these omission were material because "[t]he fact that a principal, like Stengell, was sanctioned or found to have violated similar

22

business laws in Kentucky is an important fact to an investor when deciding whether or not to invest in Grimes County #4."

d.      *April 2006 Alabama Order*

The PPM stated that the Alabama Securities Commission issued an amended cease and desist order against Andrew A. Flowers (one of Allied Energy's currently registered agents) and Heartland Resources, Inc., ordering them to cease and desist from further offers or sales of securities into, within, or from the State of Alabama.  The order was issued before Flowers was employed by Allied Energy, and was disclosed to the Commonwealth of Kentucky, Department of Financial Institutions, which approved Flowers as a registered agent in the Commonwealth of Kentucky for 2011.

The ALJ found that although the PPM did not disclose that the April 2006 Alabama Order had found that Flowers had engaged in a "general solicitation" in violation of federal securities laws, which voided any exemption from registration claimed by Heartland Resources, Inc. for the securities offering in Alabama, the omission was not material.  The ALJ noted that no predecessors of Allied Energy were involved in the matter, and that the PPM provided the type of information a reasonable investor would consider in reaching an investment decision.

e.      *May 2007 Alabama Order*

The PPM stated:  "The Alabama Securities Commission issued an administrative complaint against Allied Energy challenging their

23

offering exemption.  Having a good and valid defense, the company will defend this action vigorously and anticipates a favorable conclusion. The company maintains that the state of Alabama has no rightful claim.  Any conclusion against Allied Energy would not affect the financial condition of the company or operations of the partnership. The Managing General Partner has rejected the settlement offer proposed by the Commission."

The ALJ found that the PPM failed to disclose any details of this administrative complaint, or that the Alabama Securities Commission issued a cease and desist order (the May 2007 Alabama Order).  The ALJ noted that the May 2007 Alabama Order involved a securities offering issued by predecessors to Allied Energy in oil and/or gas ventures, and that it found those securities, which were offered and/or sold by Stengell (who was the executive vice president of the predecessors) and others, were neither registered nor exempt from registration.  The May 2007 Alabama Order also found that Stengell and others (1) offered or sold securities by materially misleading statements; (2) acted illegally as a dealer, agent, investment advisor, or investment advisor representative; and (3) failed to inform investors of the Texas Order discussed in section C.2.a., *ante*.  It ordered Stengell and others to cease and desist from further offers or sales of securities in the state of Alabama.

The ALJ concluded that the failure to disclose the names of the issuers of the offering, the investment, the names of the individuals involved in the action, or the allegations, findings, or outcome of the proceedings were material omissions, because "[t]he fact that a

principal, like respondent Stengell, has been sanctioned or found to have violated similar business laws in Alabama is an important fact to an investor when deciding whether or not to invest in Grimes County #4." In addition, the ALJ found the PPM was misleading in stating that the company anticipated a favorable conclusion to the Alabama complaint, because there was no evidence that the respondents did prevail.

### f.  *February 2007 Alabama Order*

The PPM stated:  "The Alabama Securities Commission issued a Cease and Desist Order (Administrative Order No. CD-2007-0006) against one of Allied Energy's currently registered agents, John R. Bernier ('Bernier'), in which Bernier, certain other individuals and Ascension Financial Solutions were ordered to immediately cease and desist from further offers or sales of any securities into, within or from the State of Alabama.  The above-referenced Cease and Desist Order was issued before Bernier became employed by or had any association with Allied Energy.  Bernier contends that he was never employed by Ascension Financial Solutions, that he never made any offers of sales of securities on behalf of Ascension Financial Solutions, and that the foregoing Cease and Desist Order arose from a single sale of an oil and gas interest that he made to a Florida resident while he was employed by Heartland Resources, Inc. and that such individual later moved to Alabama some time after the sale was made.  Allied Energy and Bernier have disclosed the above-referenced Cease and Desist Order issued by the Alabama Securities Commission to the Commonwealth of

Kentucky, Department of Financial Institutions ('DFI'), and DFI has approved Bernier as a registered agent in the Commonwealth of Kentucky for 2011."

The ALJ noted that the February 2007 Alabama Order found that Bernier was an agent of Ascension and was engaged in the offer and/or sale of certificates of interest or participation in oil and/or gas titles or leases, and that he sold unregistered certificates of interest to an Alabama resident. The February 2007 Alabama Order also found that the responding parties failed to disclose to their investors the April 2006 Alabama Order (discussed in section C.2.d., *ante*), which was a violation of Alabama's securities law.

The ALJ found that the PPM was misleading because it stated that Bernier contended he was never employed by Ascension and had not made any offers or sales of securities to an Alabama resident, despite the contrary findings in the February 2007 Alabama Order. The ALJ concluded the statement in the PPM was a material misrepresentation or omission because "[t]he fact that a currently registered agent of Allied Energy, like Bernier, was found to have violated similar business laws in Alabama is an important fact to an investor when deciding whether or not to invest in Grimes County #4."

g.      *2007 California Order*

The PPM stated: "The California Department of Corporations issued a Desist and Refrain Order against Allied Energy Group and T3 CBM Development, along with various officers and other named individuals. The complaint alleges that the offering of T3 CBM

Development did not have available exemptions from registration or if such exemptions were available, they were not properly employed and alleged that the offering materials did not adequately disclose the information in the litigation section. Allied is of the opinion that such disclosure was accurately disclosed. Allied and the individuals are certain that these statements are not true and are vigorously defending the action. Allied is of the opinion that it will be successful in these proceedings, and even if this is not accomplished, these proceedings would have no material effect on the financial status of Allied or business operations for the company. [¶] Currently registered Allied Energy agent Frank Morones ('Morones') were [*sic*] the subject of the above-referenced Desist and Refrain Order issued by the California Department of Corporations. The above-referenced Desist and Refrain Order has been disclosed by Allied Energy and Morones to the Commonwealth of Kentucky Department of Financial Institutions ('DFI'), and the DFI has approved Morones as registered agents for 2011."

The ALJ noted that the disclosed order (the 2007 California Order) involved an offering of securities issued by Allied Energy's predecessors, Stengell, and others, to drill and test gas wells. The 2007 California Order found that (1) the securities were offered and/or sold through materially misleading misrepresentations or omissions; and (2) Stengell and the other responding parties made material omissions by failing to disclose numerous regulatory or civil actions against them, including the Texas Order (discussed in section C.2.a., *ante*) and the Pennsylvania Order (discussed in section C.2.b., *ante*). The ALJ also

27

noted that the 2007 California Order was affirmed by an administrative law judge and adopted by Commissioner in 2008, that the respondents' petition for writ of administrative mandamus was denied by the Los Angeles Superior Court in 2009, that the superior court's ruling was affirmed by this court in September 2010, and that the Supreme Court denied review.[7]

The ALJ found that the failure to disclose that the 2007 California Order included a finding against Allied Energy predecessors, Stengell, and another executive and director of Allied Energy for offering securities by materially misleading statements constituted a material omission, as it is an important fact to an investor when deciding whether to invest. The ALJ also found that the statement in the PPM suggesting that Allied Energy would be successful in its challenge to the 2007 California Order was a material misrepresentation because it "is the type of information a reasonable investor would consider in reaching an investment decision."

2. *Stengell's Arguments*

On appeal, Stengell does not challenge the ALJ's (or the trial court's) findings as to what was omitted from or misrepresented in the disclosures, but simply disputes the ALJ's findings that the omissions and/or misrepresentations were material. He contends the ALJ

---

[7] We note that the ALJ's proposed decision states that the Supreme Court denied review on December 15, 2015. However, our review of the court's records show that review was denied on December 15, 2010, before the PPM for Grimes County #4 was issued.

improperly determined materiality as a matter of law, and that none of the omissions or misrepresentations were material. We hold that substantial evidence supports the trial court's conclusions that (1) the ALJ made appropriate factual findings regarding materiality, and (2) substantial evidence, and the weight of the evidence, supports those findings.

a.    *Materiality Test*

The test for materiality is the same under federal and California law: "'A fact is material if there is a substantial likelihood that, under all the circumstances, a reasonable investor would consider it important in reaching an investment decision. [Citation.]'" (*Insurance Underwriters Clearing House, Inc. v. Natomas Co.* (1986) 184 Cal.App.3d 1520, 1526 (*Insurance Underwriters*); see also *TSC Industries, Inc. v. Northway, Inc.* (1976) 426 U.S. 438, 449 (*TSC Industries*).)  In *TSC Industries*, the Supreme Court discussed the materiality test in the context of a challenge by a stockholder to a proxy statement.  The Court stated: "An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote. . . .  It does not require proof of a substantial likelihood that disclosure of the omitted fact would have caused the reasonable investor to change his vote.  What the standard does contemplate is a showing of a substantial likelihood that, under all the circumstances, the omitted fact would have assumed actual significance in the deliberations of the reasonable shareholder.  Put another way, there must be a substantial likelihood that the disclosure

of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." (*Id.* at p. 449.)

"The issue of materiality may be characterized as a mixed question of law and fact, involving as it does the application of a legal standard to a particular set of facts. . . . [W]e must bear in mind that the underlying objective facts, which will often be free from dispute, are merely the starting point for the ultimate determination of materiality. The determination requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact. Only if the established omissions are 'so obviously important to an investor, that reasonable minds cannot differ on the question of materiality' is the ultimate issue of materiality appropriately resolved 'as a matter of law.'" (*TSC Industries*, *supra*, 426 U.S. at p. 450, fns. omitted; see also *Insurance Underwriters*, *supra*, 184 Cal.App.3d at pp. 1526-1527.)

b.      *The ALJ Did Not Decide Materiality as a Matter of Law*

Stengell asserts that the ALJ must have found *as matter of law* that the misrepresentations and/or omissions at issue were material because there was no competent evidence in the record to establish that the omissions and/or misrepresentations were material. Not so.

"The question of materiality . . . is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable

30

investor." (*TSC Industries*, *supra*, 426 U.S. at p. 445.) It does not require expert testimony; all that is required in a case such as this one is evidence of what was disclosed about the various administrative proceedings and what actually happened in those proceedings. It is then up to the trier of fact—which in this case was the ALJ—to make the assessment whether the omitted or misrepresented fact was material, i.e., whether a reasonable investor would consider it important in deciding whether to invest. (*Id.* at p. 450; *Insurance Underwriters*, *supra*, 184 Cal.App.3d at p. 1526.) As the trial court found, that is what the ALJ did here. Sitting as the trier of fact, the ALJ found, as to the Texas Order, the Pennsylvania Order, the Kentucky Complaint, the February 2007 Alabama Order, the May 2007 Alabama Order, and the 2007 California Order that the omitted and/or misrepresented information was the type of information a reasonable investor would consider important in deciding whether to invest in Grimes County #4. In other words, the trial court correctly concluded that the ALJ made the determinations of materiality as matters of fact rather than as matters of law.

c. *The ALJ's Materiality Findings Were Adequate and Supported by the Evidence*

Stengell raises two additional challenges to the ALJ's materiality findings. First, he argues that the findings were inadequate under *Topanga Assn. for a Scenic Community v. County of Los Angeles* (1974) 11 Cal.3d 506 (*Topanga*). Second, he argues that, as to each order or complaint at issue, the misrepresentations or omissions were not

material because none of the facts at issue would significantly alter the total mix of information made available to the investor.  We conclude substantial evidence supports the trial court's rulings that the ALJ's findings were adequate and supported by both substantial evidence and the weight of the evidence.  (*Shenouda*, *supra*, 27 Cal.App.5th at p. 512.)

### i.    *Adequacy Under Topanga*

In *Topanga*, the California Supreme Court explained that Code of Civil Procedure section 1094.5 requires "that the agency which renders the challenged decision must set forth findings to bridge the analytic gap between the raw evidence and ultimate decision or order. . . .  By focusing . . . upon the relationships between evidence and findings and between findings and ultimate action, the Legislature sought to direct the reviewing court's attention to the analytic route the administrative agency traveled from evidence to action.  In so doing, we believe that the Legislature must have contemplated that the agency would reveal this route." (*Topanga*, *supra*, 11 Cal.3d at p. 515.)  In other words, an administrative agency must make findings sufficient to show how the evidence led to its decision to impose the challenged order.  However, "[a]dministrative findings are generally permitted considerable latitude with regard to their precision, formality, and matters reasonably implied therein." (*Southern Pacific Transportation Co. v. State Bd. of Equalization* (1987) 191 Cal.App.3d 938, 954.)

In this case, the trial court found that "the ALJ and Department made sufficient factual findings in support of the materiality

determination to satisfy Topanga. . . .  Both Petitioner and the court can understand the Decision's mode of analysis and the evidence upon which the Decision is based."  Substantial evidence supports the trial court's finding.  The record shows that for each materiality finding, the ALJ set forth the evidence and the reason why the ALJ found the misrepresentations or omissions at issue were material.  That is all that is necessary to "bridge the analytic gap between the raw evidence and ultimate decision or order." (*Topanga, supra,* 11 Cal.3d at p. 515.)

### ii.    *Texas Order*

Stengell argues here (and argued in the trial court) that "it is not material that the PPM disclosure [regarding the Texas Order] did not say Stengell [was] on an advisory board, and this would not adversely affect the reliability of other statements or add to the total mix of facts."  The trial court disagreed.  It noted that Stengell "misinterprets the Decision as finding that the material omission was [Stengell's] service on the advisory board. . . .  Instead, the material fact was that a principal of Grimes County #4, i.e. [Stengell], was involved with a company, also in the oil and gas business, that was found to have violated Texas securities law by making material misleading statements."  The court found that substantial evidence (and the weight of the evidence) supported the ALJ's finding that a reasonable investor would consider this information important in deciding whether to invest in Grimes County #4.

Substantial evidence supports the trial court's conclusion.  Stengell grossly mischaracterizes the stated basis for the ALJ's finding

of material omissions, which not only included the PPM's failure to disclose that there was a *finding* against predecessors to Allied Energy *for offering securities by materially misleading statements*, but also that Stengell was involved with one of those predecessors at the time those securities were offered for sale.

### iii.  *Pennsylvania Order*

Stengell contends that disclosure of the Pennsylvania Order was not required because that order had been rescinded as to him. Once again, Stengell misrepresents the facts and the ALJ's findings.

As the trial court found, and as is supported by substantial evidence, although a *prior* order from the Pennsylvania Securities Commission was rescinded, a new order was issued, and it is that new order that was the subject of the ALJ's finding that the failure to disclose constituted a material omission. That order barred Stengell from offering or selling securities in Pennsylvania without retaining knowledgeable counsel, ordered him to permanently cease and desist from violating the Pennsylvania Securities Act of 1972, and ordered him to pay $1,000 in investigative and legal costs.

While Stengell attempts to minimize the seriousness of these directives, the fact remains that those directives were imposed because the Pennsylvania Order found that Stengell was the vice president of investor relations for a company that sold unregistered and nonexempt securities in violation of Pennsylvania securities laws. The trier of fact found that a reasonable investor would find this information was important in deciding whether to invest in a project managed by a

34

company in which Stengell is a top executive, and the trial court concluded that the finding is supported by substantial evidence and the weight of the evidence. Stengell gives us no reason to find otherwise.

### iv. *Kentucky Complaint*

Stengell similarly attempts to minimize the seriousness of the information that was omitted or misrepresented in the PPM's description of the Kentucky Complaint. The trial court found that the PPM failed to disclose that the Kentucky Complaint alleged violations of securities laws, that Stengell was found to be culpable, and that Stengell (and the other respondents) were ordered to offer rescission to investors. Stengell does not dispute these facts. He simply disputes that these omitted facts "would have 'significantly altered the "total mix" of information made available' if they had been in the PPM." However, in light of the facts (as also found by the trial court) that the business venture at issue in the Kentucky Complaint was similar to the business venture in this case, that Stengell was involved in both ventures, and that the Kentucky Complaint involved violations of securities laws, we conclude that substantial evidence supports the trial court's determination that substantial evidence and the weight of the evidence supported the ALJ's materiality finding.

### v. *May 2007 Alabama Order*

In challenging the materiality finding regarding the omissions and/or misrepresentations related to the May 2007 Alabama Order, Stengell ignores many of the facts that formed the basis for the ALJ's

finding that there were material omissions and misrepresentations in the PPM's disclosure. But even as to the few facts he does address, his arguments have no merit.

For example, he challenges the assertion that the PPM did not disclose that the Alabama Securities Commission (ASC) issued a cease a desist order, arguing that the PPM disclosed that the ASC issued an administrative complaint, and "[t]he difference between disclosing a cease and desist order and an administrative complaint is a difference without a distinction to an investor not steeped in administrative law." We doubt that an investor, particularly one "not steeped in administrative law," would view the issuance of an administrative complaint and the issuance of a cease and desist order as equally serious. Stengell certainly points to no evidence in the record to support his assertion.

Similarly, Stengell argues that the PPM's disclosure that the ASC challenged Allied Energy's exemption for the securities at issue was equivalent to disclosing that the ASC found that the exemption was voided. He points to no evidence in the record to suggest that a reasonable investor would understand that a challenge to an exemption is the same as a finding that the exemption is void.

Stengell misses the point when he argues that "[i]t is immaterial that the PPM did not disclose the finding in the 2007 Alabama regulatory action that the 2004 Texas regulatory action had not been disclosed" because "[s]uch a disclosure would have been redundant." What makes that failure to disclose a material omission in the present case is the fact that the May 2007 Alabama Order put Allied Energy on

notice that information about the Texas Order was information that an investor would find important when deciding whether to invest in a similar project managed by Stengell and Allied Energy's predecessors. Yet Allied Energy and Stengell once again chose not to disclose it in the PPM for Grimes County #4.

Finally, Stengell argues the ALJ was incorrect in stating that "the PPM was misleading in alluding that respondents would prevail in defending the action." Instead, he notes that the PPM only stated that Allied Energy "'anticipated a favorable outcome.'" He misses the point. The PPM stated: "Having a good and valid defense, the company will defend this action vigorously and anticipates a favorable conclusion." The ALJ found that the statement in the PPM was misleading because there was no evidence that there was a favorable outcome.

In short, Stengell's challenge to the materiality finding with respect to the May 2007 Alabama Order fails.

vi.     *February 2007 Alabama Order*

Stengell challenges the materiality finding as to the February 2007 Alabama Order by mischaracterizing the order and attempting to minimize the significance of the information the ALJ found the PPM misrepresented or failed to disclose. As noted, the February 2007 Alabama Order involved an action by the ASC against an entity not affiliated with Allied Energy and two agents of that entity, one of whom (John R. Bernier) was then employed by Allied Energy at the time the PPM in this case was issued. Stengell asserts that "Bernier's employer's president and broker/dealer director were the ones who were

37

blamed for not adequately supervising Bernier," which resulted in the securities violation. Therefore, he argues that the violations found by the ASC "are not material to the way Allied Energy conducted its business." (Italics omitted.)

He is incorrect in his description of the proceedings. Bernier was a named respondent in the February 2007 Alabama Order. He (not just his supervisors) was found to have violated Alabama securities law by engaging in the offer of and/or sale in Alabama of securities that were neither registered nor exempt from registration in the state of Alabama. And as one of the named respondents, he was ordered to "immediately CEASE AND DESIST from further offers or sales of any securities into, within or from the state of Alabama."

Moreover, although (as the trial court found) Stengell is correct that the PPM did not "deny" that Bernier was employed by the entity that issued the securities in question, the PPM's statement that "Bernier contends that he was never employed by [the issuer and] that he never made any offers or sales of securities on behalf of [the issuer]" gives the misimpression that Bernier was not found to have violated the Alabama securities laws. Thus, the trial court properly found that substantial evidence and the weight of the evidence supported the ALJ's finding that "[t]he fact that a currently registered agent of Allied Energy, like Bernier, was found to have violated similar business laws in Alabama is an important fact to an investor when deciding whether or not to invest in Grimes County #4."

### vii. *2007 California Order*

Stengell's challenge to the materiality finding with regard to the 2007 California Order mostly ignores the ALJ's actual findings and the actual language of the PPM. The ALJ found a material omission in the PPM's failure to disclose that the 2007 California Order found that *Stengell* and Allied Energy's predecessors *offered securities by materially misleading statements.* The ALJ also found a material misrepresentation in the PPM's statements that Allied Energy is "vigorously defending the action" and "is of the opinion that it will be successful in these proceedings."

Stengell contends there was no material omission because the PPM's statement that the order was issued "against Allied Energy Group and T3 CBM Development, along with various officers and other named individuals" was sufficient, and that "[a]dding the actual names is simply an unnecessary elaboration on the disclosed facts." He also contends the PPM's statement that the complaint brought by the Department of Corporations "alleged that the offering materials did not adequately disclose the information in the litigation section" was sufficient because "[s]ophisticated investors like those who invested in Grimes County #4 can easily interpret the disclosure in the PPM to mean that the California Corporations Commissioner found that the litigation disclosures were not adequate."

We disagree with both contentions. First, the PPM's reference to "various officers and other named individuals" does not give potential investors notice that the president and chairman of the board of Allied Energy at the time the PPM was issued was one of the people found to

have violated California's securities laws. Nor does the statement that "the offering materials did not adequately disclose the information in the litigation section" adequately convey the fact that Stengell and the other respondents were found to have *misrepresented* information regarding several of the litigation proceedings and failed to disclose several relevant proceedings.

Finally, Stengell argues that the misrepresentation that Allied was vigorously defending the 2007 California regulatory action and believed it would be successful was not material because the regulatory action was disclosed and "[n]o sophisticated, accredited investor would believe that an administrative matter was dragging along for more than three years." We disagree. There is nothing in the record to indicate that an accredited investor (such as Ebens) necessarily has sufficient knowledge that a regulatory action that was begun in November 2007 would have been resolved by February 2011, when the PPM was issued. Instead, the PPM falsely gave potential investors the impression that although the Department of Corporations filed a complaint against Allied Energy and Stengell, Allied Energy and Stengell were likely to prevail on it.

3. *Conclusion*

None of Stengell's challenges to the materiality findings with regard to any of the orders or complaints at issue has merit. Substantial evidence supports the trial court's conclusion that the ALJ made those findings as the trier of fact, and not as a matter of law. Similarly, substantial evidence supports the trial court's findings that

each of the ALJ's materiality findings was supported by substantial evidence and by the weight of the evidence.

## DISPOSITION

The judgment is affirmed.  The Department and Commissioner shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, Acting P. J.

We concur:


COLLINS, J.


CURREY, J.

41