Filed 3/21/22  Stalnaker v. Cupp CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

|  |  |
|---|---|
| JOHN STALNAKER, JR.,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>CAROLE L. CUPP,<br><br>    Defendant and Respondent. | D078684<br><br><br>(Super. Ct. No. 37-2020-00022289-PR-TR-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Jeffrey S. Bostwick, Judge.  Affirmed.

Craig J. Leff for Plaintiff and Appellant.

Finlayson Toffer Roosevelt & Lilly and Jesse S. Finlayson for Defendant and Respondent.


## I

## INTRODUCTION

Trust beneficiary John Stalnaker, Jr. (John Jr.) appeals an order granting a motion to quash service of his petition for a trust accounting and discharge/surcharge of trustee Carole Cupp (Carole).  The trial court

determined it did not have personal jurisdiction over Carole, an 83-year old resident of Tennessee. We agree with the trial court. Therefore, we affirm the challenged order.

## II

## BACKGROUND

### A

In 1981, husband John Stalnaker, Sr. (John Sr.) and wife Mary Stalnaker (Mary) executed a revocable living trust in San Diego. They amended the living trust from time to time, most recently in 1992.

As amended, the living trust provided for the creation of two sub-trusts upon the death of the first spouse—(1) a revocable survivor's trust consisting of the surviving spouse's separate property and community property interests, and (2) an irrevocable maximum credit trust consisting of the deceased spouse's separate property and community property interests. John Sr. and Mary were designated as the initial co-trustees of the living trust, and John Jr. (John Sr.'s son and Mary's step-son) and Carole (Mary's sister) were named as successor co-trustees, effective upon the death of the first spouse. John Jr. was a beneficiary of the maximum credit trust (in the event John Sr. predeceased Mary), and a contingent remainder beneficiary of the survivor's trust and the maximum credit trust.

In 2000, John Sr. died in San Diego County.

In 2001, Mary moved to Tennessee where her sister Carole resided. In 2009, Mary died in Tennessee. She left Carole all of her property in her will. Carole served as the executor of Mary's estate, which was probated in Tennessee.

B

In March 2020, John Jr. served Carole with a demand letter requesting an accounting of all assets held in the maximum credit trust.

A few months later, John Jr. filed a petition in San Diego Superior Court requesting an accounting of the living trust and its sub-trusts, removal of Carole as trustee, and a trustee surcharge for alleged misappropriation of trust assets and breach of fiduciary duty. The petition alleged Mary (during her lifetime) and Carole had misappropriated assets held in the maximum credit trust without his consent as co-trustee and in violation of the trust's distribution terms.

Carole filed a motion to quash service of the petition for lack of personal jurisdiction. She asserted California courts did not have general jurisdiction over her because she was a Tennessee resident, she did not own property in California, and she had not been to California in nearly twenty years. She argued California courts lacked specific jurisdiction over her as well because she did not purposefully avail herself of the state's benefits, John Jr.'s claims did not arise out of her alleged contacts with the forum state, and the exercise of jurisdiction would be unreasonable. In particular, she claimed: (1) she never agreed to act as co-trustee, (2) she never administered the trust in California (or elsewhere), (3) any alleged misconduct occurred in Tennessee where she served as the executor of Mary's estate, and (4) the exercise of jurisdiction in California would be unfair given her Tennessee residency, her advanced age (83 years old), and the fact Mary's estate was probated in Tennessee.

In a declaration attached to the motion to quash, Carole averred she was unaware she was a co-trustee of any trust until she received John Jr.'s demand letter, and she did not knowingly exercise any powers as a co-trustee

3

under any trust. Further, she averred she performed all activities related to the probate of Mary's estate in Tennessee.

John Jr. opposed the motion to quash and claimed the court had specific jurisdiction over Carole. He argued she purposefully availed herself of California's benefits based on three contacts she allegedly had with Jack Kaufman, a San Diego-based attorney who prepared the living trust and its amendments. John Jr. filed a declaration from Kaufman describing his alleged contacts with Carole.

According to John Jr. and Kaufman, the contacts were as follows:

First, on or about July 15, 2003, Carole, Mary, and Kaufman had a conference call during which they discussed an amendment to the trustee designations for the survivor's trust. In the words of Kaufman, the amendment changed the "trustee from John Stalnaker to [Mary's] sister," which we will presume is a reference to Carole.

Second, on or about July 16, 2003, Carole sent Kaufman a letter asking him for a copy of the trust amendment just discussed, so that Carole could "perform [her] duties as co-trustee" of the survivor's trust.

Third, on or about July 29, 2003, Carole sent Kaufman a letter stating Mary wanted further amendments to the survivor's trust. The letter stated Mary wanted to designate two co-trustees (Carole and Barry Cupp, whose relationship to the sisters is not apparent from the record) and a successor co-trustee (Cheryl Thompson, whose relationship to the sisters is not apparent from the record either), because "Mary prefer[red] to have two co-trustees and one successor co-trustee."[1]

---

[1] Before the trial court, John Jr. argued that Carole purposefully availed herself of California's benefits, in part, because Kaufman allegedly sent certain trust-related letters from California to Carole in Tennessee. John Jr. does not repeat these arguments on appeal.

4

John Jr. argued Carole's contacts with Kaufman allowed her to "carry out her co trustee [sic] duties in administering the trust in question," and, therefore, John Jr.'s claims arose out of her forum-related contacts. He asserted the exercise of jurisdiction would be reasonable as well, given that John Sr. and Mary were California residents, they executed the living trust in California, the living trust had a California governing law provision, and most of the witnesses and documents were in San Diego County.

Carole filed a reply in support of her motion to quash. She disputed the authenticity of the letters filed with John Jr.'s opposition and asserted they did not, in any event, evince a purposeful availment of California's benefits. Carole also argued the petition did not arise out of her alleged contacts with Kaufman because those contacts concerned the *survivor's trust* and John Jr.'s claims were based on Carole's alleged misappropriation of assets from the *maximum credit trust*. Finally, Carole argued the exercise of jurisdiction would be unreasonable for many of the same reasons previously discussed.

Together with the reply, Carole filed a declaration averring she did not recall sending the letters referenced in John Jr.'s opposition and she knew nothing about them. She averred she did not knowingly exercise any power as trustee and, to the best of her recollection, she was not involved in Mary's financial affairs until she was appointed executor of her estate.

After a hearing, the trial court granted Carole's motion to quash. It noted there were "several issues with [the] credibility of the evidence." It found, on the one hand, that Carole's statements disclaiming knowledge of the trust were "directly contradicted by Mr. Kaufman's declaration and the documents attached thereto." It noted, on the other hand, that Kaufman had been "disciplined by the California State Bar on numerous occasions, which call[ed] into question his credibility." The court declined to resolve these

5

credibility issues and instead found John Jr.'s evidence, assuming it was credible, was insufficient to justify the exercise of jurisdiction over Carole.[2]

In particular, the court found John Jr. failed to establish that Carole purposefully availed herself of California's benefits. The court reasoned that Carole "only ask[ed] for documentation relating to the Trust" during her contacts with Kaufman, and there was "no attorney-client relationship between [Carole] and Mr. Kaufman." The court found Mary and Carole were both in Tennessee during the alleged contacts; therefore, "to the extent that [Carole] and Mary were cotrustees or individual trustees during this time, the principal place of administration of the Trust would have been in Tennessee." According to the court, Carole and Mary were located in Tennessee when Mary died and when Carole administered Mary's estate; "again, the principal place of administration would have been in Tennessee." Further, John Jr. claimed he only recently found out about the trust; therefore, "there [was] no way he could have been administering the trust in California …." Finally, the court found there was no evidence that Carole held or administered any property in California.

For all these reasons, the court found John Jr. failed to meet his burden of proving purposeful availment. The court quashed service of the petition without deciding whether the lawsuit arose from Carole's contacts with California, or whether the exercise of jurisdiction would be reasonable.

---

[2]    In his opening brief, John Jr. repeatedly states that the trial court "found Kaufman's declaration to be credible." These statements are untrue. The trial court openly questioned Kaufman's reliability and explicitly declined to make any credibility findings.

III

DISCUSSION

A

*General Legal Principles*

"California's long-arm statute authorizes California courts to exercise jurisdiction on any basis not inconsistent with the Constitution of the United States or the Constitution of California.  (Code Civ. Proc., § 410.10.)  A state court's assertion of personal jurisdiction over a nonresident defendant who has not been served with process within the state comports with the requirements of the due process clause of the federal Constitution if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate ' "traditional notions of fair play and substantial justice." ' "  (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444–445, quoting *International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)

When a court makes a minimum contacts determination, " 'an essential criterion in all cases is whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.' "  (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268.)  Minimum contacts determinations are fact-specific and " 'few answers will be written "in black and white.  The greys are dominant and even among them the shades are innumerable." ' "  (*Ibid.*)

Personal jurisdiction may either be general or specific for purposes of the minimum contacts inquiry.  (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1062.)  " 'For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile; for a corporation, it is an equivalent place, one in which the corporation is fairly

7

regarded as at home.' [Citation.] A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." (*Bristol-Meyers Squibb Co. v. Superior Court* (2017) 137 S.Ct. 1773, 1780 (*Bristol-Meyers*).) John Jr. does not claim general jurisdiction. Therefore, we focus solely on whether the exercise of specific jurisdiction over Carole would comport with due process.

"In order for a state court to exercise specific jurisdiction, 'the *suit'* must 'aris[e] out of or relat[e] to the defendant's contacts with the *forum*.' [Citations.] In other words, there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.' [Citation.] For this reason, 'specific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction.'" (*Bristol-Meyers, supra*, 137 S.Ct. at p. 1780.)

Courts may exercise specific jurisdiction over a nonresident defendant who has not been served with process within the forum state—which in this case is California—when three requirements are met. "First, the defendant must have purposefully availed himself of the privilege of conducting activities in this state, thereby invoking the benefits and protections of California's laws. Second, the claim or controversy must relate to or arise out of the defendant's forum-related contacts. Third, the exercise of jurisdiction must be fair and reasonable and should not offend notions of fair play and substantial justice." (*Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 392.)

When an out-of-state defendant moves to quash service for lack of personal jurisdiction, the plaintiff seeking to hail the defendant into court "bears the initial burden of establishing the first two elements by a preponderance of the evidence, and if the plaintiff does so, the out-of-state

defendant then bears the burden of convincing the court why the exertion of personal jurisdiction would *not* comport with fair play and substantial justice." (*Jacqueline B. v. Rawls Law Group, P.C.* (2021) 68 Cal.App.5th 243, 253 (*Jacqueline B.*).) To carry its initial burden, "[t]he plaintiff must do more than merely allege jurisdictional facts. It must present evidence sufficient to justify a finding that [the forum state] may properly exercise jurisdiction over the defendant. [Citation.] The plaintiff must provide affidavits and other authenticated documents in order to demonstrate competent evidence of jurisdictional facts. ... Declarations cannot be mere vague assertions of ultimate facts, but must offer specific evidentiary facts permitting a court to form an independent conclusion on the issue of jurisdiction." (*In re Automobile Cases I & II* (2005) 135 Cal.App.4th 100, 110.)

"In reviewing a trial court's dismissal for lack of personal jurisdiction, we independently review the court's legal rulings and its application of the law to its factual findings [citations], but review those factual findings only for substantial evidence [citation]." (*Jacqueline B., supra*, 68 Cal.App.5th at p. 251.)

B

*John Jr. Failed to Establish Purposeful Availment*

John Jr. argues that Carole purposefully availed herself of California's benefits due to the three alleged contacts she had with Kaufman, a San Diego-based attorney, nearly two decades ago. According to John Jr., the purposeful availment element was satisfied because Carole obtained "legal advise [sic] and assistance" during her alleged contacts with Kaufman. Alternatively, John Jr. claims Carole "secur[ed] the legal keys to assume control of both sub trusts" during these contacts. Even if we assume the

9

disputed contacts occurred, they fall short of establishing that Carole purposefully availed herself of California's benefits.

With respect to John Jr.'s first argument, John Jr. failed to present the trial court with any evidence that Carole ever secured, or attempted to secure, legal assistance through her alleged contacts with Kaufman. Rather, as the trial court correctly found, the alleged "correspondence and telephone call regarding amending the Trust indicate that *Mary* was [Kaufman's] client." (Italics added.) Indeed, all three alleged contacts concerned amendments to the survivor's trust—a sub-trust established by John Sr. and Mary. Further, John Jr. elicited no other competent evidence to support the existence of an attorney-client relationship between Kaufman and Carole.

With respect to John Jr.'s second argument, John Jr. failed to introduce any evidence that Carole initiated the contacts at issue to obtain "the legal keys" necessary for her to control the sub-trust underlying John Jr.'s petition. His petition alleged misappropriation of assets from just one of the two sub-trusts created by the living trust–the maximum credit trust. However, all three of Carole's alleged contacts with Kaufman concerned the other sub-trust created by the living trust—the survivor's trust. Thus, Carole's alleged contacts with Kaufman had nothing to do with the trustee designations, or the "control" provisions, of the sub-trust that is the focus of John Jr.'s petition.

Even if the contacts at issue had pertained to the correct sub-trust, the trial court still would not have erred in granting the motion to quash. In the trial court, John Jr. vaguely argued that Carole and Mary "participated in [the] telephone conference with Kaufman … to carry out certain changes in the trust …." Using similarly ambiguous language, Kaufman averred in his declaration that he had a "telephone conference with [Carole] and Mary…."

10

However, John Jr. presented no evidence that Carole—as opposed to Mary or Kaufman himself—initiated this supposed telephone conference. Further, John Jr. presented no evidence of the role that Carole played, if any, during the purported telephone conference. Thus, Carole may have acted as a mere passive recipient of a call planned, instigated, and led by Kaufman and/or Mary. Given this possibility, we cannot infer from the mere existence of a telephone conference that Carole aimed her conduct at California. (See *Farina v. SAVWCL III, LLC* (2020) 50 Cal.App.5th 286, 296 ["The actions of third parties … generally are irrelevant to whether defendants … purposefully availed themselves of a forum's benefits."] (*Farina*).)

The letters allegedly sent by Carole to Kaufman did not demonstrate purposeful availment either. In the letter dated July 16, 2003, Carole simply asked Kaufman for documentation of a trust amendment that had already been made. The letter dated July 29, 2003 merely conveyed a request from Mary asking for additional amendments to the survivor's trust. Carole had already been named co-trustee by the time she conveyed this request, which did not grant her any greater or additional authority than she already had. In short, John Jr.'s evidence did not establish that Carole sent the alleged correspondence to secure control over any of the trusts referenced herein.

Additionally, there are many other facts suggesting Carole did not purposefully direct her activities to California. As the trial court found, Carole resided in Tennessee and Mary moved to Tennessee shortly after John Sr.'s death; thus, "to the extent that [Carole] and Mary were cotrustees or individual trustees during this time, the principal place of administration of the Trust would have been in Tennessee." As the trial court also found, and as both parties appear to agree, Carole served as executor of Mary's estate from Tennessee, and Mary's estate was probated in Tennessee.

11

Further, there is no indication in the record, and John Jr. does not argue, that any trust property was ever held or administered in California.

Finally, John Sr. and Mary's actions, standing alone, do not establish purposeful availment. John Sr. and Mary lived in California, executed the living trust in California, and included a California choice of law provision in the trust. But, "[o]nly when a defendant purposefully directs a third party's activities toward the forum state can the actions of the third party be imputed to the defendant. [Citation.] Thus, even when a third party is involved, the focus of our inquiry remains on the *defendant*'s actions and intent." (*Farina, supra*, 50 Cal.App.5th at p. 296; accord *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 475 [the " 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result … of the 'unilateral activity of another party or a third person' "].)

There is no indication in the record, and no argument made, that Carole directed or controlled John Sr. and Mary's actions. Thus, John Sr. and Mary's residence in California, their execution of the trust in California, and their inclusion of a California choice of law provision do not establish that nonresident Carole directed her activities to California. (See *Hanson v. Denckla* (1958) 357 U.S. 235, 254 ["It is urged that because the settlor and most of the appointees and beneficiaries were domiciled in [the forum state] the courts of that [s]tate should be able to exercise personal jurisdiction over the nonresident trustees. This is a nonsequitur. … [Personal jurisdiction] is resolved in this case by considering the acts of the trustee."].)

Because John Jr. failed to establish purposeful availment, we affirm the order granting Carole's motion to quash service of the petition.[3]

## IV

## DISPOSITION

The order quashing service of the petition is affirmed. Respondent Carole Cupp is entitled to her appellate costs.

McCONNELL, P. J.

WE CONCUR:

HUFFMAN, J.

IRION, J.

---

[3] On appeal, John Jr. argues substantial evidence did not support the challenged order because Carole's declaration was "obviously false [and] not worthy of belief …." We need not address this argument because John Jr. has not identified any particular factual findings lacking sufficient evidentiary support. (*Doe v. Roman Catholic Archbishop of Cashel & Emly* (2009) 177 Cal.App.4th 209, 218 [appellant waived substantial evidence challenge to order quashing service of summons by failing to discuss challenged findings]; *Shenouda v. Veterinary Medical Bd.* (2018) 27 Cal.App.5th 500, 515 [appellant waived substantial evidence challenge by failing to address trial court's findings or explain why the evidence did not support the findings].) Further, we need not address the argument because John Jr.'s evidence, standing alone, was insufficient to satisfy the purposeful availment requirement.

13